SYKES, Respondent, *v.* REPUBLIC COAL CO., Appellant.

(No. 7,045.)

(Submitted April 10, 1933. Decided May 4, 1933.)

[21 Pac. (2d) 732.]

*Mr. W. W. Mercer* and *Messrs. Murphy & Whitlock,* for Appellant, submitted a brief; *Mr. Mercer* and *Mr. A. N. Whitlock* argued the cause orally.

*Messrs. Loble & Adair* and *Mr. F. W. Mettler,* for Respondent, submitted a brief; *Mr. Hugh R. Adair* and *Mr. Mettler* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal of the Republic Coal Company from a judgment of the district court of Musselshell county, setting aside certain findings of the Industrial Accident Board and awarding William Sykes compensation in the sum of $1,791.43, with legal interest from May 1, 1931, being the date when payments under the order of the board ceased. The judgment was entered January 19, 1932, on an appeal from the order of the board and on the record made before the board at a hearing in January, 1930, supplemented by evidence as to the condition of the plaintiff from that date to the time of trial.

The uncontroverted evidence shows that in June, 1929, Sykes was a robust, able-bodied and hard-working man of the age of 42 years, and with a wife and three children to support. He had worked as a coal miner for 30 years and in the employ of the defendant company for the past 17 years; he had had no training fitting him for any other work, and had no means of supporting his family other than by his manual labor. On June 17, 1929, while Sykes was working in defendant's mine, a slab of rock, approximately five feet long, three feet wide, and three to four inches thick, fell from the ceiling, a distance of about six feet, upon Sykes' shoulders and back, knocking him down. Sykes was able to walk to a car and went to his home. Within a week he returned to work and worked until August 22, when he was compelled to quit on account of severe pains in his back and neck; he remained in bed for five or six weeks under the care of a chiropractor; his left leg became partially paralyzed. As a result of this condition he was reported by his employer as "reinjured August 22, 1929," from which date the defendant paid him compensation for the period of one year. On August 22, 1930, the superintendent of the company offered Sykes light work for a month or two; which Sykes declined, whereupon the company ceased making payments. Sykes then petitioned the board for a determination of his disability and

for a lump sum settlement, and a hearing was duly had at which lay witnesses, physicians who had attended him up to that date, and Dr. Garberson, who had examined him at the request of the defendant, testified.

All of the doctors agree that Sykes shows symptoms of an injury to his spinal column and later partial paralysis of the left leg, but could find no evidence, by physical examination and the use of the X-ray, of any bony lesion and therefore declare his disability to be functional, rather than organic. They all acquit him of malingering and declare him to be partially disabled, but venture the opinion that he should eventually recover. He is rated by his physicians as a 25 per cent. disability. Dr. Garberson noted a "very slight suggestion of lipping in the lumbar region" and expressed the opinion that Sykes was suffering from arthritis of the spine. None of the doctors venture an opinion as to when the man would recover. Dr. Garberson's statement was: "I believe that his ultimate prognosis should be good and that he will probably recover with little or no disability."

On this evidence the board declared that Sykes "suffered a disability of a partial character and that such disability will have ended, in the opinion of the board, on or about May 1st, 1931," and ordered the payment to him of $20 per week for a period of 37 weeks, in addition to the payments already made. Sykes appealed from the order of the board, after a motion for a rehearing was denied.

At the opening of the trial in the district court, counsel for Sykes asked, and was granted, leave to submit additional evidence "in support of * * * the objections to the findings of * * * the board, for the reason that the court should be apprised of the present condition of the appellant and such medical testimony as is necessary * * * should be admitted for the purpose of bringing the issues of fact and law * * * down to date." The additional testimony adduced is to the effect that Sykes' disability did not end by May 1, 1931. Lay witnesses testified that at the time of trial he was unable to perform any labor; became exhausted driving a car;

suffered continuously, and was in no better condition than at the time of the hearing before the board. Again the doctors, having re-examined the claimant, expressed the opinion that the man's condition was due to "traumatic neurosis," but that it was "a question of how much is physical and how much is psychic and mental condition"; that his condition was about the same as it was on previous examinations.

The court declared: "There is no evidence in the record that would justify the finding of the Industrial Accident Board that the period of any disability ended on May 1st, 1931"; that "from and after August 26th, 1930," the claimant suffered from "a twenty-five per cent. * * * partial disability, permanent in character" resulting from the accident; and, as he has a wife and three dependent children, he is entitled to $20 per week compensation, 25 per cent. of 500 weeks, less the total of the payments made. Judgment was entered pursuant to the findings of fact and conclusions of law, for the sum of $1,791.43, with interest from May 1, 1931. Before the entry of judgment the defendant filed exceptions to the findings, which were overruled, and has now appealed from the judgment, challenging the correctness of the findings and predicating error on the admission of additional testimony.

It is first contended that the court exceeded its authority in permitting additional testimony to be introduced in the absence of an affidavit or other formal showing of the discovery of new evidence or changed condition, it being asserted that, as this court has declared in *Morgan* v. *Butte Central Min. Co.*, 58 Mont. 633, 194 Pac. 496, that the position of the court was analogous to that of a judge, other than the one who presided at the trial, to whom a motion for a new trial has been submitted, the rules respecting new trials should apply.

Section 2960, Revised Codes of 1921, provides that on such a hearing as this, "the court may * * * for good cause shown, permit additional evidence to be introduced, but, in

the absence of such permission * * * the cause shall be heard on the record of the board.''

While the statute contemplates merely a review of the record before the board, unless there is some special reason or ''good cause'' for the reception of additional evidence, and in no case permits a full ''trial *de novo*'' (*Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124; *Dosen* v. *East Butte Min. Co.*, 78 Mont. 579, 254 Pac. 880), all parts of the Workmen's Compensation Act are to be given a liberal construction (sec. 2964, Rev. Codes 1921), and in the absence of some statutory requirement as to the manner in which the discretion of the court shall be invoked, the informal presentation of persuasive reasons why additional testimony should be taken, made in the presence of opposing counsel who thus has an opportunity to be heard on the subject, is a sufficient showing of ''good cause.''

Here the very purpose of the appeal was to test the correctness of the board's order limiting the period of payment, on the assumption that the claimant's disability would disappear within a given time. For this purpose it was necessary that the court be advised as to the claimant's condition at the time of the expiration of the period fixed and at the time of the trial. No error was committed either in granting the leave to introduce, or the reception of, the evidence bringing the record of fact conditions ''up to date.''

For a determination of the disagreement between the board ▮ and the court as to the duration of disability, we must look to the evidence adduced before the board. The questions of incapacity and the duration thereof are to be determined as are other fact questions. (*Gorrell* v. *Battelle*, 93 Kan. 370, 144 Pac. 244.) The period of payments is usually determined on the testimony of physicians as to the probable cause of the injury (*Gregory* v. *Merrill Metal Co.*, 1 Cal. I. A. C. Dec. 408), but when this expert testimony is indecisive, the determination should be in favor of the injured workman (*Spencer* v. *Gibson*, 1 Cal. I. A. C. Dec. 565).

The most positive statement found in the record is that of Dr. Garberson in response to the question: "Would you give it as your medical opinion that this man should fully recover without any permanent disability?" His answer was, "I think, to all intents and purposes, yes." Neither one of the two doctors ventured an opinion as to when the claimant would be likely to recover and, as will be later seen, their testimony in this regard is "indecisive." The record, therefore, justifies the court's finding that the board's declaration as to the duration of disability was unwarranted.

Does the record as a whole warrant the finding of the court to the effect that the claimant suffers a 25 per cent. disability, "permanent in character"?

While the doctors testified before the board that there was ██ nothing apparent from a physical standpoint to prevent Sykes from doing light work, they further agreed that he suffered from a mental or neurotic condition. The additional testimony before the court was to the effect that his condition had not changed; lay witnesses testified he could not chop wood or carry a "bucket of coal" into the house; became exhausted from riding in a car; suffered continually. The best that was said as to his recovery is Dr. Garberson's statement: "Given a certain set of mental conditions and this man may completely recover." Discussing "traumatic neurosis," the doctor explained, that "in many of those cases some particular mental stimulus of various types—it may be religious, it may be some civil affair—any particular stimulus might be strong enough to snap the man out of it." Again the witness absolved the claimant of the charge of malingering.

Thus it will be seen that the period of recovery, if recovery is effected at all, is indefinite—and recovery highly problematical and dependent upon a change of mental condition to be brought about through the operation of some stimulus impossible of accurate application and dependent solely upon chance and the efforts of the victim, while no assurance is given that the victim, though he exert his mental processes to the utmost, could by the exertion of will-power "snap out of

it." The expert testimony recalls Shakespeare's question, "Who can minister to a mind diseased?" This neurotic condition incapacitating the claimant from work, if clearly the result of the industrial accident, entitles the injured workman to compensation. The fact that the workman, but for the want of sufficient will-power, could throw off his condition brought about by hysteria and neurosis caused by the injury, cannot deprive him of his right to compensation based on his inability to work. (1 Schneider on Workmen's Compensation Law, 1147, and cases cited.)

It has been said that "the effects of an accident are at least two-fold; they may be merely muscular effects—they almost always must include muscular effects—and there may also be, and very frequently are, effects which you may call mental, nervous and hysterical. * * * The effects of this second class, as a rule, arise as directly from the accident which the workman suffered as the muscular effects do; and it seems to me entirely a fallacy to say that a man's right to compensation ceases when the muscular mischief is ended, but the nervous and hysterical effects still remain." (*Eaves* v. *Bleanclydach Colliery Co., Ltd.*, 2 B. W. C. C. 329 C. A.; 1 Honnold on Workmen's Compensation, 602.)

Ordinarily the term "permanent," applied to a personal injury, means lasting during the future life of the injured party (*Du Cate* v. *Town of Brighton*, 133 Wis. 628, 114 N. W. 103), but within the meaning of the risk assumed by an insurer, the term is said to mean "lasting or continuous," as distinguished from temporary (*Metropolitan Life Ins. Co.* v. *Noe*, 161 Tenn. 335, 31 S. W. (2d) 689), and under the government's "War Risk" policy, Judge Bourquin, of our federal district court, approved the following definition of a "permanent disability": "If it be reasonably probable that this status will long continue, is not temporary, the disability is * * * permanent in legal contemplation and within the intent * * * of the Act" (*Law's Case*, (D. C.) 290 Fed. 972, 976; *Nordberg* v. *United States*, (D. C.) 51 Fed. (2d) 271).

Under the liberal construction of Workmen's Compensation Acts, if it is shown that an injured party will suffer disability for an indefinite period, his disability is "permanent in character" within the meaning of the Act. (*Clark* v. *Forest Lumber Co.*, 9 La. App. 639, 120 So. 88.)

The court (or board) can act only on the facts before it, ▮ "not upon the uncertain possibilities of the future." The proper course is to deal with the case as it stands at the time of hearing, and, unless there is some definite evidence justifying a finding that a recovery is reasonably certain, compensation should be allowed on the basis of permanent disability; and if, during the period for which compensation is allowed, the injured workman recovers, the payments may be terminated on application for a modification of the order as authorized by the statute. (*Feldman* v. *Braunstein*, 87 N. J. L. 20, 93 Atl. 679.) If the testimony shows that the disability would be overcome by a simple operation or definite treatment, and continues only because the injured party refuses to submit thereto, the employer is exonerated (*Mount Olive Coal Co.* v. *Industrial Commission*, 295 Ill. 429, 129 N. E. 103; 7 W. C. L. J. 272); but this rule is not applicable here, as there is nothing definite in the statements, either as to recovery or treatment.

In a similar case, showing that a workman became neurotic and disabled over the mere loss of a finger, the court stated the familiar rule that the burden of proof is on the claimant and his dependents, which burden must be sustained by a preponderance of the evidence, and that "if the evidence, though slight, is yet sufficient to make a reasonable man conclude in his favor on the vital points, then his case is proved. But the rational mind must not be left in such uncertainty that these essential elements are not removed from the realm of fancy." The court then said: "We agree, in the main, with the rule as thus stated. If the conclusion that the total disability of the workman is permanent is in the 'realm of fancy,' the judgment herein cannot stand. But is it?" Declaring neu-

rosis to be "a progressive disease" and that the evidence showed the injured workman to have been afflicted with an extreme case of "neurosis," the court refused to interfere with the trial court's declaration that the disability was "permanent." (*Carter Oil Co.* v. *Gibson*, 34 Wyo. 53, 241 Pac. 219, 221.)

The finding that the claimant's disability is "permanent in character" is justified by the evidence. Then what of the award?

The Act provides compensation for injury producing "temporary total disability" and "total disability permanent in character," and for "specified injuries" (secs. 2912, 2913 and 2920, Rev. Codes 1921, amended by Chapter 177, secs. 12, 13, 16, Laws of 1929). These "specified injuries" are the loss of members, or parts of members, of the body, which loss, of course, constitutes in each instance a partial permanent disability, and the loss of both hands, both arms, both eyes, etc., or any two thereof, is declared to constitute "total disability permanent in character." Thus the Act recognizes permanent disability either from the loss of members, or from other injuries, which may be either partial or total. Partial disability, permanent in character, by reason of the loss of a member of the body, is compensable under the schedule provided in section 2920, as amended. When a workman has suffered an injury which causes partial disability, but has lost no member of his body, his compensation must be fixed according to the provisions of section 2914, as amended by Chapter 177, sec. 2, Laws 1929.

Counsel for the defendant assert that the award is erroneous under the decision in *Sullivan* v. *Anselmo Min. Corp.*, 82 Mont. 543, 268 Pac. 495, but, while the law still does not permit the use of the percentage method of determining compensation, the instant decision is based on the statute applicable, without attempt to resort to equitable powers under section 2940, as in that case. In view of the radical changes made in section 2914, by the amendment above noted, the

court was authorized to award the claimant $20 per week for some portion of the 500 weeks mentioned, on its finding that the claimant had suffered a partial permanent disability; the number of weeks during which such payment shall continue being left to the discretion of the court in order to do justice between the parties.

Under the Act discussed in the *Sullivan Case,* the award could not exceed *one-half* of the weekly allowance for total permanent disability; under the amendment there is no distinction made between partial and total disability in this respect, except that the wages which the injured workman, but partially disabled, may be able to earn shall be taken into consideration. In the instant case the lay witnesses testified that the claimant was not able to perform work of any kind, and, while the doctors ventured the opinion that he should be able to do light work, this opinion was based on his physical condition. The evidence as a whole warrants a finding of no earning capacity and an award of the maximum weekly allowance, as fixed in the amended section, of $20 per week. (*Novak* v. *Industrial Accident Board,* 73 Mont. 196, 235 Pac. 754.)

The maximum period of payments under the amended Act (sec. 2914, as amended by Chap. 177, sec. 2, Laws of 1929) is 500 weeks, and if, as the evidence would indicate, the man is totally unable to work, his disability should have been classed as total, rather than partial. The doctor's rating of 25 per cent. disability was based on his physical condition, and there is nothing in either the evidence or the law to justify the court's rating on the percentage basis, but as there were no exceptions taken to the findings by the claimant and no cross-assignments of error made, this finding will stand.

While the law does not authorize the determination of the per cent. of disability, the matter of determining the number of weeks over which payments shall extend is, as stated, within the discretion of the court, and all that its conclusion on the per cent. basis amounts to is a declaration that the

claimant shall be paid for 125 weeks, out of the allowable 500 weeks.

The evidence supports the judgment and it is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.