TWEEDIE, RESPONDENT, *v.* INDUSTRIAL ACCIDENT BOARD, APPELLANT.

(No. 7,458.)

(Submitted January 10, 1936. Decided January 22, 1936.)

[53 Pac. (2d) 1145.]

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Henry McClernan,* Special Assistant Attorney General, argued the cause orally.

*Mr. F. W. Mettler,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On September 16, 1929, George Tweedie received severe injuries as the result of an accident occurring while in the employ of the Eagle Coal Company in its mines at Bear Creek. He never was restored to capacity; and was paid compensation up to the time of his death on April 4, 1933.

Mary Tweedie filed claim for compensation as the widow of the deceased and hearings were had thereon in May, 1933, the claimant not being represented by legal counsel, when both laymen and doctors testified to some extent as to the condition of deceased from the time of injury until his death and as to the cause of death. The matter was held in abeyance until May 7, 1934, when the board, on findings filed, denied the claimant compensation on the ground that "to find that his death was caused by the accidental injury would be a mere 'guess' or 'stretch of the imagination.' " The board then declared: "In addition to this the board finds no provision of law permitting a beneficiary to file a claim for compensation more than six months after the happening of the accident."

A petition for a rehearing was filed within time upon the grounds: (1) That the decision was influenced by fraud practiced on the board; (2) new evidence which the claimant could not have discovered with reasonable diligence prior to the hearing; and (3) that the evidence does not justify the findings of the board in that the evidence, other than that which was false and adduced in fraud, established claimant's right. Affidavits

in support of the petition were filed dealing with the alleged fraud and false testimony. The petition was denied, and thereupon the claimant appealed to the district court.

At the opening of the trial in the district court counsel for the claimant asked leave to introduce testimony other than that adduced before the board "for the purpose of showing the actual facts occurring at the time of the injury and of the physical condition of the injured workman as caused by the accident, as having a material and important bearing upon the question as to whether the accident * * * was the proximate cause or a contributing cause of the death"; to show that the board misunderstood portions of the testimony before it and attributed the death to a cause other than that shown by the evidence; to show that certain expert testimony was not correct; and to show the exact physical condition of the injured man from the time of the accident up to his death. Lengthy objections were interposed on the ground that all of the proposed testimony could have been presented to the board at the time of the hearing, and that, if the board misunderstood the evidence before it, that fact could be shown from the record. The objections were overruled and the trial proceeded.

The claimant produced evidence covering the entire issue raised, and the record made before the board was not introduced until the close of the taking of testimony. The court disregarded the findings and decision of the board and made its own findings, in which it canvassed the evidence adduced and thereon declared that "the preponderance of the evidence, in my opinion, is that the cause of the death of the deceased was the injury." Continuing, the court declares: "It is therefore ordered, adjudged and decreed, that the plaintiff recover of the defendant the compensation which the statute provides, and that judgment is ordered entered accordingly."

Judgment was entered awarding Mrs. Tweedie compensation at $15 per week for 216 weeks, commencing the day after Tweedie's death; that on January 9, 1935, 87 weeks' payments were in arrears, amounting to $1,305, and interest thereon

amounts to $65, creating a lump sum due of $1,370, which was ordered paid and the weekly payments continued from January 9, 1935, until the 216 weeks' payments shall have been made.

The board has appealed from the judgment, contending that the court erred in the following particulars: In permitting the introduction of testimony in addition to that adduced before the board; in trying the cause *de novo;* in setting aside the order of the board; and in finding that the injury in 1929 was the cause of death.

In order intelligently to discuss the questions thus presented, we must have a clear understanding of just what took place at the hearings before the board; two were held, one at Billings and one at Red Lodge. These hearings were conducted without the benefit of counsel, and not all the facts which might throw light on the question involved were presented. For example, little was said respecting the accident and the extent of the injuries sustained by the deceased; his condition during the period from the accident to his death was touched upon in such manner as to leave an inference that, at some time during that period, he had practically recovered from his injuries, particularly as to body injuries. That this evidence was misleading or misunderstood is demonstrated by the statement of the board in its order, to-wit: "Tweedie made the usual recovery which is made in hundreds of cases of a similar nature, with the exception that his right leg fracture was particularly severe and the healing result of the leg injury was not as good as is usual." As to the first declaration, there was no positive testimony as to Tweedie's recovery, and, on the trial in the district court, it was shown that he was practically bedridden during the entire period. On the hearing there was some discussion of cancer of the liver, but no doctor testified that the man was suffering from that disease; the death certificate gave "acute uremia" as the cause. Dr. Stevens, who made the certificate without knowing of the injury, reported to the board that Tweedie's liver was "much enlarged," and stated: "I gave the

cause of death acute uremia, probably sarcoma of liver and other complicating diseases not determined; * * * it is very probable that the accident was the primary cause of these developments.'' Testifying before the board, the doctor was shown his report and asked if he cared to make a correction, when he changed his statement to read "probably carcinoma," a "primary" cancer, instead of "sarcoma," a secondary cancer.

From a report made to the board by Dr. J. M. Flynn of Helena, as to the condition of Tweedie in October, 1930, determined by a thorough examination, the chairman of the board read to Dr. Stevens the following statement: "X-Ray, Stero-anterior-posterior of the lower lumbar vertebrae and pelvis. There is evidence of an old fracture of the left side of the body of the fifth lumbar vertebra, with the spinous process rotated to the left out of line with the other processes, etc. Conclusion. Examinee has suffered marked trauma to the back with injury to the muscles and ligaments of the lumbar area." The chairman then propounded the question: "Now with that description of Mr. Tweedie's condition in October, 1930, and there being no other medical report with regard to any progress he made for the better or worse until his death or until you saw him, would you say that—could you say positively that the cause of death was his accident in 1929? A. No, I could not say positively. Q. Would you say that it was a contributing cause? A. I could say that it was a contributing factor."

When Dr. Oleinick, who attended the deceased from the time of the injury up to about three months before his death, was on the stand, the chairman propounded to him the following question: "Dr. Stevens testified that carcinoma of the liver caused his death. Now we know the cause of death. What Mr. Riddell [a layman assisting Mr. Tweedie] wants to know is whether, if the carcinoma did cause his death, whether in your opinion the accidental injury he received in 1929 was the cause of the disability which brought about his death. By Mr. Riddell: Or a contributing cause. A. I am not in a position, under these circumstances, to say that the injury * * *

was the causative agent, either contributing or immediate, of death.''

The decision of the board contains the following statement: ''Upon taking the stand at the hearing in Billings, Dr. Stevens said that he would like to make a correction as to the cause of death. Asked what correction he would like to make, he said that in his report to the board he had given the cause of death as acute uremia, but that death was caused by carcinoma. He stated that he had reported officially on the death certificate that death was caused by carcinoma.'' As a conclusion, based on the foregoing finding and Dr. Oleinick's answer, based on the premise that Tweedie's death was caused by carcinoma, the board declares that ''we do not think any reasonable mind, with medical training, would say that an injury three and one-half years prior to death by carcinoma or cancer of the liver could be either the immediate or contributing cause of death.'' With this conclusion we agree, but cannot find in Dr. Stevens' testimony warrant for the positive finding that death resulted from carcinoma.

The motion for a rehearing was made for the purpose of correcting the misunderstanding of the board, and the supporting affidavits are to the effect that Dr. Oleinick read to three witnesses a report to the board to the effect that the injury was the proximate cause of death, and stated that he would make that report if paid $500, otherwise not, thus offering to impeach the doctor's testimony. Further it was contended that the hypothetical question propounded to Dr. Stevens was not sufficient, and for that reason the doctor should be re-examined.

The board having denied a rehearing, in the light of the confusion found in the record before it, the court did not abuse the discretion vested in it to ''permit additional testimony'' upon a showing of ''good cause'' (sec. 2960, Rev. Codes 1921), even though much of the additional testimony was repetitious and rendered the trial, in effect, a trial *de novo*. (*Woin* v. *Anaconda C. M. Co.*, 99 Mont. 163, 43 Pac. (2d) 663, 668; *Dosen* v. *East Butte C. M. Co.*, 78 Mont. 579, 254 Pac.

880.)   The evidence produced on the hearing before the board was so incomplete and so confusing with respect to the necessary facts to be considered in arriving at an intelligent conclusion that the court was justified in permitting the claimant to cover the whole field in order to have a clear and fair presentation of the merits of the controversy from both sides thereof.   Thus there was shown to the court "special reason" for granting the motion to permit additional testimony, necessary to move the court's discretion.   (*Nicholson* v. *Roundup Coal Min. Co.*, 79 Mont. 358, 257 Pac. 270; *Sykes* v. *Republic Coal Co.*, 94 Mont. 239, 22 Pac. (2d) 157.)   In holding that a district court did not abuse its discretion with reference to a situation similar to that here presented, we said: "While much of the evidence taken on the trial was cumulative, it was necessary from the claimant's point of view, to-wit, that the true facts were not properly brought out on the hearing and that the decision of the board was based on a misconception of the facts." (*Best* v. *London Guarantee & Accident Co.*, 100 Mont. 332, 47 Pac. (2d) 656, 659.)

The Compensation Act, and every part and section thereof, is to be liberally construed (sec. 2964, Rev. Codes 1921).   Liberal construction of the Act is commanded in order that the humane purposes of the legislation shall not be defeated by narrow and technical construction; therefore, if it is made to appear that the manner in which evidence is brought out or construed at the hearing before the court is such that the claimant may inadvertently have been done an injustice which may be corrected by the reintroduction of the testimony, even though it appears that such a situation was brought about by the lack of skill or knowledge of the claimant in presenting the case to the board, it cannot be said that the court abused its discretion in permitting the introduction of such testimony.

On the trial in the district court the following facts were brought out: Prior to the accident Tweedie was an exceptionally strong, healthy man, 57 years of age, 6 feet tall, and weighing 180 pounds.   On September 16, 1929, while Tweedie was break-

264

ing coal in the mine, the entire ceiling in the "room" in which he was working fell; he was crushed down upon the broken lumps of coal by a slab of rock 8 to 10 inches thick and 6 feet long—practically buried by it. It was found that, in addition to a badly fractured leg, his body was covered with contusions, bruises, and "bumps"; he had a particularly large bruise on his right side at the juncture of the chest and abdomen, and severe bruises on his lower back. The injured man was unconscious for 3 days. On September 29 the patient suffered "severe agonizing pains" in his right chest, from which the attending physician determined that the patient suffered from "a pulmonary embolism which, from the injury evidently caused an infarct."

Dr. Flynn's examination, more than a year later, disclosed injury to the spine, as heretofore stated, and that "the examinee has suffered marked trauma to the back."

The injured man made no recovery from his injuries, but remained a confirmed invalid and complained of severe pains for the rest of his life. This is conceded by counsel for the board, and it is not contended that there is no substantial evidence to support the claim that death resulted from this condition which was brought about by the injuries received at the time of the accident. Counsel for the board sum up their contention as follows: "The claimant [deceased] was confined for a long period of time with an incapacity which was traceable to the accident. After three and a half years a disease appeared which may have no connection with the accident; * * * that some cause other than the injury was the cause of the disease which resulted in the death of the workman, is just as clearly indicated as that his death resulted from the accident."

The question thus presented is as to where lies the preponderance of the evidence. In determining this question, we are governed by the well-known rules, first, that, "when there is conflict in the evidence, if it does not appear that the evidence clearly preponderates against the findings of the board, the judg-

ment of the court reversing the order of the board must be reversed, and the decision of the board dismissing the application must stand" (*Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43, 47); and, second, that "this court will not reverse the finding of the district court except where the evidence clearly preponderates against it" (*Woin* v. *Anaconda C. M. Co.*, supra).

In all cases reviewed by the district court on the record made before the board, or where the additional testimony admitted is unimportant, the appeal is governed by the first rule (*Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973), but in cases wherein the additional testimony is such as to demonstrate that the clear preponderance of the evidence is against the findings of the board, the second rule governs, even though the evidence adduced before the board clearly preponderates in favor of its order.

It is submitted that, where the new testimony could well have been presented to the board, the decision of the court should not be affirmed, but rather the proceeding should be resubmitted to the board for its determination. This might be a proper procedure in the event it is found that the additional testimony should not have been received, but the board was given an opportunity for a reconsideration of its decision in the manner provided by the Act; that is, on the motion for a rehearing, which it denied. But one course was left to the claimant: Appeal to the district court and secure permission to show the real facts to the court. On such an appeal the district court is authorized by the Act to modify or change the decision of the board "as law and justice shall require," and to "make and enter any finding, conclusion, order or judgment that shall be required, or shall be legal and proper in the premises." (Sec. 2961, Rev. Codes 1921; *Willis* v. *Pilot Butte M. Co.*, 58 Mont. 26, 190 Pac. 124.)

Drs. Stevens and Oleinick testified before the board, as heretofore noted; they testified for the claimant on the appeal to the court; and Dr. Person there testified on behalf of the

board. Dr. Stevens prefaced his testimony before the court with the statement that the recitation appearing in the board's findings "is not the testimony I gave," and that, in testifying before the board, he did not intend to withdraw the opinion expressed in his report to the board that "it is very probable that the accident was the primary cause of these developments." All three of the doctors testifying before the court rejected the theory of the board that Tweedie died of cancer of the liver, and all agreed that the direct cause of death was uremic poisoning relating back to diseased kidneys.

Given the entire case history of the injured workman from the date of injury to the date of death, Dr. Stevens was of the opinion that the injury received was "probably" the primary cause of the condition which resulted in Tweedie's death. He was followed by Dr. Person, called on behalf of the board. Dr. Person, arguing from the premise that the medical testimony "in some places" was "not very good," and assuming that the kidney trouble was chronic and of long standing, deduced that the diseased condition of the kidneys was due to infection and may have existed since deceased's youth, and therefore declared that he could see no connection between the injury and the cause of death. There is nothing in the record, at least up to the time Dr. Person testified, to indicate whether the kidney disease was of recent origin or of long standing. Whether or not the witness would have testified as he did— whether he would have considered the medical testimony better —had he heard the testimony of Dr. Oleinick, who attended Tweedie from the time of the accident until shortly before his death, is, of course, not disclosed.

Dr. Oleinick, following Dr. Person, gave the case history of deceased at length, in the course of which he reported that he found albumen in the urine on October 14 following the accident; that theretofore a "thrombus"—blood clot from the injured leg—lodged in the right lung, and that this would cause a weakened condition of the kidneys. The doctor testified that, from his knowledge of the man's physical condition before

and after the accident and the history of the case down to the last time he examined him, "the primary cause of his death was the accident—the injury; the contributing cause * * * the pulmonary embolism, and the final cause * * * uremic poisoning." On cross-examination the doctor stated that the condition of albumen in the urine continued from October, 1929, down through the years and was present the last time he saw the patient, three months before his death, and declared: "The conclusion I drew from the case was the infarct—a pulmonary embolism * * * caused the decompensated heart and eventually the kidney condition." The fact that the doctor gave a contrary answer to the board, based on an erroneous premise, does not destroy the effect of the foregoing testimony, nor does the fact that the witness was asked an impeaching question, based on the *ex parte* affidavits filed in support of the motion for a rehearing, which was not followed by proof of the allegation contained in those affidavits.

It is not necessary that the cause of death be proved to a moral certainty, but merely "by a preponderance of the evidence," and this proof may be by circumstantial evidence. (*Moffett* v. *Bozeman Canning Co.*, supra.) In view of the circumstances related and the expert testimony adduced, it is clear that the evidence does not clearly preponderate against the findings of the court; on the contrary, it justifies the court's declaration that the evidence clearly preponderates against the decision of the board.

No question is raised as to the correctness of the specific judgment and award made by the court, and it is therefore approved.

Judgment affirmed.

Mr. Chief Justice Sands and Associate Justices Stewart, Anderson and Morris concur.