GRIEF, Respondent, *v.* INDUSTRIAL ACCIDENT FUND, APPELLANT.

(No. 7,939.)

(Submitted May 24, 1939.   Decided June 13, 1939.)

[93 Pac. (2d) 961.]

520

*Mr. T. J. Collins,* for appellant, submitted a brief, and argued the cause orally.

*Mr. R. R. Purcells,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

522

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from a judgment of the district court of Carbon county. The respondent, Mrs. Marjorie Grief, filed an application with the Industrial Accident Board for compensation arising out of the death of her husband, Robert Grief. The decedent was engaged in operating a garage and service station in the city of Red Lodge. On September 5, 1936, the J. L. Mc-Laughlin Construction Company, operating under Plan 3 of the

Workmen's Compensation Act, was engaged through an employee in moving certain equipment on the highway from Cook to Plentywood, Montana. The equipment consisted of a three-ton International truck on which was mounted an oil distributor, a trailer being pulled by the truck on which was mounted a boiler which was used for the purpose of heating oil for application on the road. When the equipment was on the highway near Roberts, Montana, the trailer became unhooked from the distributor truck and turned over into the ditch. One William Eastman was the employee of the construction company who was driving the oil distributor. He had full power under circumstances such as these to employ persons to assist him. He found it impossible to right the boiler and employed one Ted Hendricksen, who furnished blocks, chains and jacks, to assist him in doing so. They could not right the boiler and get it back on the highway. They then went to Roberts and 'phoned the decedent. The latter operated a wrecker service in connection with his garage. In the 'phone conversation with the decedent he was asked by Eastman what he would charge to assist Eastman in placing the boiler back on the highway. In reply decedent stated it would cost about $6. As a result of the conversation the decedent proceeded with his wrecker to the place of the accident. By the combined use of the wrecker and the distributor truck, the boiler was righted, and the decedent made some effort to pull it back on the highway with his wrecker but was unable to do so. He then pulled his wrecker to the opposite side of the highway and parked it in the ditch, while Eastman attached the distributor truck to the trailer. When Eastman hooked onto the trailer, Hendricksen took a position in front of the truck, it being in the night-time, to signal persons using the highway to prevent collision. The decedent was given a flashlight by Eastman and he took up a position at the rear of the truck for the purpose of signaling travelers and for the additional purpose of informing Eastman as to the progress he was making in pulling the trailer out of the ditch. As the trailer was being pulled out, an automobile ran into the decedent who, as a result of the injuries sustained, died.

The decedent's widow, the respondent here, as stated above, filed an application for compensation under the Workmen's Compensation Act, and, upon hearing, her application was denied. Subsequently a rehearing was granted and held, and again the application was denied. Appeal was taken to the district court. The matter was submitted to that court on the records of the hearings before the Industrial Accident Board, the testimony taken at the inquest, and various exhibits introduced in the previous hearings. Judgment was entered in favor of the respondent, and it is from that judgment this appeal is taken.

The several assignments of error are all based on the single question as to the status of the decedent with relation to the construction company at the time of the accident. It is the contention of the Industrial Accident Board that the decedent was an independent contractor, and not an employee or servant of the construction company. With this view we cannot agree.

This court on a number of occasions has defined an "independent contractor." Several of these definitions have been cited by both the appellant and the respondent. A leading case defining the term is *Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673 : "The relation of the parties under a contract of employment is determined by an answer to the question : Does the employee in doing the work submit himself to the direction of the employer, both as to the details of it and the means by which it is accomplished? If he does he is a servant and not an independent contractor." A more recent case to the same effect is *Shope* v. *City of Billings,* 85 Mont. 302, 278 Pac. 826, and the most recent case discussing the question of independent contractor is *Greening* v. *Gazette Printing Co.*, ante, p. 158, 88 Pac. (2d) 862.

From the testimony in the present case, it appears that control over the activity of the decedent during all of the time he was assisting in the righting of the boiler rested in Eastman, the employee and representative of the construction company. He had tried for some time with the aid of Hendricksen to right the trailer and, as he testified, he was in full control then.

When asked specifically as to whether he turned the work over to decedent after the latter arrived, he said there was nothing said about it. Several references are made in the testimony and the record to the fact that the decedent was assisting Eastman. In a letter written by J. L. McLaughlin, the president of the construction company, made a part of the record, he states that the decedent was called to "assist in clearing a wreck * * *. It was while assisting to clear this wreck that Mr. Grief was struck." The record shows that in righting the boiler the construction company's truck was also used. Under the *Shope Case*, supra, where the facts were that the contractor retained control, the mere fact that the city furnished trucks and assistance was held not sufficient to constitute the contractor a mere employee. The mere furnishing of assistance by the company to the decedent would not be sufficient to make him an independent contractor if there were circumstances to show otherwise.

The appellant stresses the fact that the decedent was engaged in an independent business which included the operation of a wrecker service. That fact would tend to indicate that usually the decedent would act as an independent contractor. But he might be an independent contractor in 95 per cent. of the cases where he used his wrecker, and a mere employee in the other 5 per cent. Whether he is an employee or an independent contractor depends in each case upon the fact, primarily, as to the matter of control by the employer.

Ordinarily, an agreement in advance as to the price of the exact service to be performed is an indication of the independent contractor relationship. If the agreed price is for the securing of a certain result without regard to the length of time consumed in its performance, there is a strong indication of independent contractor relationship. The record does not reveal that payment to the decedent was dependent upon getting the trailer on the road. It shows that he merely agreed to help Eastman in doing so. Eastman testified that after both the wrecker and his truck were hooked to the boiler, "I could not pull it, could not set it up."

*It is to be noted* here that there never was an agreed price. The testimony is that during the telephone conversation the decedent stated that the cost would be about $6. If it should be granted that the decedent was an independent contractor up to the time he parked his wrecker and the truck was hooked onto the trailer, it is clear that from then on he was in the position of a mere servant. If decedent ever had control, the construction company, through its employee Eastman, took over completely, at that time, the job of getting the trailer out of the ditch. Eastman gave the decedent a flashlight for the purpose of signaling other cars, and the decedent assumed that duty and also the duty of informing Eastman as to the progress that was made in removing the trailer from the ditch. Hendricksen who was performing the same service, employees of the construction company testified was a mere servant, and Eastman testified he had full control over his work.

It does not appear that decedent gave any orders to the others, or in any way was in control of the work at the time the accident happened. He was in the position of an ordinary servant, with no control over the work and without any of the attributes of an independent contractor. The record demonstrates conclusively that control of the work being performed rested in Eastman from the moment decedent arrived. There is no conflict in the evidence on this point, and the only question is one of law which the lower court determined. (See *Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43, and cases therein cited.) The lower court in its findings found that the work being performed by the decedent was within the usual occupation of the construction company, and that Eastman was authorized to hire him, and it is not contended otherwise.

It is to be remembered that the statutes specifically provide in section 2964, Revised Codes, that "whenever this Act [the Workmen's Compensation Act] or any part or section thereof is interpreted by a court, it shall be liberally construed by such court." And it has been consistently held by this court that this means liberally in favor of the claimant. (*Wirta* v. *North*

*Butte Min. Co.,* 64 Mont. 279, 210 Pac. 332, 30 A. L. R. 964; *Dosen* v. *East Butte Copper Min. Co.,* 78 Mont. 579, 254 Pac. 880.) There is ample evidence to sustain the lower court.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and STEWART concur.

Rehearing denied September 5, 1939.