KUSTUDIA, Respondent, v. INDUSTRIAL ACCIDENT
BOARD, Appellant.
No. 9282.
Submitted May 26, 1953. Decided June 26, 1953.
258 Pac. (2d) 965.

Mr. Arnold H. Olsen, Atty. Gen., and Mr. John L. McKeon, Asst. Atty. Gen., for appellant.

Mr. J. H. McAlear, Red Lodge, for respondent.

Mr. McKeon and Mr. McAlear argued orally.

MR. CHIEF JUSTICE ADAIR:

George Kustudia was employed as a coal miner by the Montana Coal & Iron Company. On March 20, 1947, while working in such employer's mine near Washoe, Montana, George Kustudia was struck by falling rock and thereby crushed and otherwise severely injured. The injuries so sustained arose out of and in the course of Kustudia's employment and were compensable under the Workmen's Compensation Act, the employer and

workman having elected to become bound under Plan III thereof, R. C. M. 1947, secs. 92-1101 to 92-1123.

At the time of sustaining his injuries Kustudia was married and the father of four minor children, who, together with his wife, resided with and were dependent upon the injured workman for their support.

Following a hearing the industrial accident board of the State of Montana made findings and conclusions,—awarded Kustudia a total of 414 weeks on a partial permanent disability and denied him a lump sum payment, whereupon Kustudia appealed to the district court of Carbon County, which court, after a trial, entered a judgment for Kustudia setting aside the board's findings, conclusions and award and adjudging that Kustudia be awarded a total disability rating; that he be paid for a full period of 500 weeks from and after the date of his injury on March 20, 1947, and that a lump sum award and payment be made to him.

This is an appeal by the industrial accident board from such judgment of the district court.

Dr. Means, who rendered first aid to Kustudia in Red Lodge immediately after the accident, reported he found: ''Extensive bruise, chest and pelvis, probable fracture of ribs possible pelvic injury and legs. Extensive bruises of all soft parts, possible abdominal injury, probable fracture left wrist.''

Dr. Means immediately caused the injured man to be transported by ambulance to St. Vincent's Hospital in Billings. At that time Kustudia was unconscious.

According to the report of Dr. Caraway of the hospital staff, Kustudia did not remember anything about his injury until after his arrival at the hospital in Billings, a distance of 59 miles from Red Lodge.

In his report to the industrial accident board, Dr. Caraway, on December 29, 1948, in part, commented: ''Looking at this man as a casualty of the accident in question, we would have to say that to all intents and purposes, he is a total permanent disability.''

Dr. Allard, the attending physician at the hospital in his certificate dated November 2, 1948, made answer to four questions as follows: "Is injured workman physically capable of working? No. If not, when will he be physically capable of working? Unknown. How long was he under your care? 3/20/47. Will he have a permanent disability? Yes."

On December 20, 1951, the industrial accident board offered to make a compromise settlement with the claimant Kustudia for $2,585 in full settlement of his claim, but on December 27, 1951, the claimant declined to accept such offer.

At a hearing before the industrial accident board held at the courthouse in Billings on February 28, 1952, Kustudia testified: That he was then 60 years old, married and had three sons, aged 14, 12 and 9 and one daughter aged 10, all dependent upon him for support; that he, his wife and children still lived at Washoe where he worked at the time he was injured; that Washoe is about 4 miles from Red Lodge; that Kustudia was born in Montenegro, Yugoslavia; that he came to Butte, Montana, in 1914; that he worked in the mines there until 1917; that in 1922 he was naturalized at Red Lodge; that he had never attended school either in Montenegro or in the United States; that a friend had taught him how to write his name in his own language and also in English; that he was confined in the hospital at Billings for 29 days and that he served in the United States Army from 1917 to 1919, being discharged therefrom on April 24, 1919.

Kustudia also testified: "Q. And since March 20th of 1947, have you worked at all? A. No, I never could work.

"Q. Have you earned any money whatsoever by work? A. Not one penny.

"Q. Are you able to work? A. No, I am not.

"Q. And is that because of your injuries of March 20, 1947? A. All from the injury I got."

At the hearing before the board a written report dated February 25, 1952, from Dr. Beal of Red Lodge, who had examined Kustudia at the request of the latter's attorney, was received in

evidence. Dr. Beal's report refers to the above mentioned report of Dr. Caraway of December 29, 1948, and also states: "Today this man has one hundred percent total permanent disability with an amount of physical ailments, which entirely prohibit any type of labor and a severe neurosis, which adds to his physical handicaps and further limits his activities. * * * This man will never work again in any capacity. Even if light work were available in this community I seriously doubt that this man could perform such work."

Following the hearing the industrial accident board found and ordered that Kustudia is entitled to compensation at the rate of $23.50 per week for a period of 414 weeks for temporary total disability and permanent partial disability making a total of $9,729, of which amount he has already received $6,439 to and including June 19, 1952, leaving a balance of $3,290, which balance shall be paid at the rate of $94 each four weeks until such amount is paid in full. However the board's order did not allow claimant a lump sum payment as authorized by section 92-715, R. C. M. 1947, as amended by Chapter 225, Laws of 1951.

Kustudia's timely application for a rehearing was denied by the industrial accident board, whereupon the workman appealed to the district court.

On September 24, 1952, the cause came on for trial in the district court, counsel for the claimant Kustudia and counsel for the board being present and both stating they were ready to proceed. Thereupon counsel for claimant made an oral statement to the court of the prior proceedings that had been had before the board and of the findings and orders of the board and then stated that it would be necessary to introduce additional evidence as to the necessity for a lump sum award because additional reasons had arisen as to the necessity for a lump sum payment since the time of such hearing before the board, stating further that the claimant's wife had material testimony to offer but was unable to attend the hearing before the board on February 28, 1952. Following such preliminary statement, counsel for

the board stated that they had no objection to the admission of such additional evidence.

Thereupon counsel for claimant Kustudia called and examined various witnesses.

One witness, a real estate dealer in Red Lodge, testified he had been consulted by claimant about purchasing a house in Red Lodge; that the witness had a modern five room home in very good condition located on a 50 x 125 foot lot with a large garden plot in the back which he would sell for $3,500; that the house was equipped with gas and electricity and contained a bathroom; that there were three rooms on the first floor and two bedrooms upstairs with an enclosed porch in the rear which could be made into a bedroom very easily; that the house was not equipped with furniture except a piano which would go with the house; that the house was located only two blocks from the Red Lodge high school; that the witness would sell the house for a $2,000 down payment; that claimant could negotiate a loan with the Empire Building and Loan Association for the remaining $1,500, at a rate of 6% interest and that monthly payments would be between $25 and $40 per month, which would include taxes, fire insurance and payments on the loan.

Claimant's wife was called as a witness. She testified as to the names and ages of their four children and that her age was 38; that they all lived at Washoe; that her husband's present income was $94 monthly from workmen's compensation; $54 a month from the government as veteran's pension for services in the first World War and a monthly pension of $100 from the Miners Union. That such amounts are the full income; that their eldest son, aged 14, works in a bakery in Red Lodge after school and receives $14 a week; that he attends school in Red Lodge; that their son Mark, aged 12, is in the eighth grade and will therefore attend school in Red Lodge the next year; that the other two children still attend grade school in Washoe, but the witness understands such school will probably be closed the next year in which event in order to attend school the children will be required to journey to Red Lodge, a distance of about five miles;

that there is no school bus from Washoe to Red Lodge; that where Kustudia's family now live they cannot raise a garden; that the home has only four rooms and a porch; that the home has no bath; that it is not large enough for the family; that the condition of the dwelling is such that it could not be moved; that the Kustudias own the present furniture in their home; that the children are all desirous of attending church services but there are no such services at Washoe; that the witness understands that if a lump sum settlement is made with the board the Kustudias would no longer receive the $94 monthly payment from the board and would receive only a $54 veteran's pension and the $100 from the Miners Union and such amount would not be sufficient for their support; that the witness would be willing to obtain outside employment and work if the family could get a house and move to Red Lodge; that the witness was advised she could obtain employment at the Red Lodge Cafe at about $80 per month or could obtain household work to do; that her children are also willing to work if anything is available; that if a lump sum settlement was made with the board she understands the claimant could make the $2,000 down payment on the house and thus acquire a much better home than the one which the family now occupies and that the balance of the lump sum could be used in the payment of debts.

Mrs. Kustudia also testified that she and her husband have compiled a list of their present debts all incurred for necessary expenses as listed on an exhibit introduced in evidence. Such exhibit shows a total indebtedness of $1,608.50 which amount includes grocery and clothing bills of $852.21. Mrs. Kustudia further tertified that her husband has not worked since the accident and that there is not very much work he is able to perform.

Claimant's counsel, Mr. McAlear, took the witness stand and introduced a contract entered into on December 26, 1951, with claimant under which the witness was to receive 25% of all sums recovered over and above the sum of $8,272 which the board offered but which the claimant declined to accept in settlement of his claim.

Mr. McAlear testified that he had interviewed several persons in Red Lodge about obtaining employment for Mrs. Kustudia in the event the family should move to Red Lodge and that he had found several persons who would employ claimant's wife; that if she could work eight hours a day she could obtain from $125 to $150 per month; that if a lump sum should be granted by the board for total disability, claimant after paying his debts including his attorney's fees would have $2,300 left for use in making the first payment of $2,000 on a house and for other purposes.

The witness McAlear also testified as to the unsatisfactory conditions in and surrounding claimant's home in Washoe; that the present house was five miles from Red Lodge; that the road from Washoe is not graded; that the road is quite steep to a point about one quarter of a mile from Red Lodge and that from such point there is a very steep drop into Red Lodge; that the road frequently becomes impassable each winter due to heavy snows and much drifting and there is a great deal of difficulty keeping the road over this steep hill open and clear of snow during the winter.

When the claimant had rested his case counsel for the industrial accident board rested without introducing any evidence.

Thereafter the trial court made and filed written findings of fact and conclusions of law wherein it found that the claimant George Kustudia was injured on March 20, 1947; that at the time claimant was earning $225 a month; that he was married and had four children dependent upon him; that claimant and his wife had elected to become bound and that they were bound by Plan III of the Workmen's Compensation Act and that at the date of the trial claimant was 61 years old.

The trial court further found:

"That the injuries sustained by the claimant were such as to totally and permanently disable him; that since the date of his injury he has been unable to earn money by work; that his disabilities have become fixed; that in addition to his physical injuries he is suffering from disabling neurosis. * * *

"VI. That the claimant has submitted to the Court, by his evidence, a plan for the social, moral, and educational betterment of himself and his family, contingent on the remaining installments of his compensation being commuted to a lump sum award, and it appears to be for the best interests of the claimant, his family, and for the best interests of the public that such payments be commuted and the balance of his compensation paid to him.

"VII. That a lump sum award likewise appears necessary to enable the plaintiff to pay his just debts and attorney fees incurred by him in this proceeding, and to allow for a balance over to move his family to a more desirable location than they now have, and to establish them in the community of their choice.

"VIII. That the said George Kustudia has heretofore petitioned the Industrial Accident Board of the State of Montana for a determination of his disability as being total and permanent and awarding to him compensation in a total of 500 weeks. That this Petition was heard before the Chairman of the Industrial Accident Board in the City of Billings, Montana, on February 28, 1952, from which the Industrial Accident Board made Findings of Fact and Conclusions of Law adjudging the claimant to be entitled to 39 weeks of temporary total disability and 375 weeks permanent partial disability, and denying to him the commutation of his payments to a lump sum award."

The court's conclusions of law state that claimant is entitled to a total permanent disability rating for a full term of 500 weeks and:

"That the claimant is entitled to commutation to a lump sum award under the provisions of section 92-715, Revised Codes of Montana of 1947, as amended by Chapter 225 of the Laws of Montana, Thirty-second Legislative Session of 1951.

"That the Findings of Fact and Conclusions of Law of the Industrial Accident Board insofar as they are in conflict herewith are in error."

Upon such findings and conclusions the trial court rendered its judgment wherein it ordered and adjudged:

"That the Industrial Accident Board of the State of Montana set aside its Findings of Fact and Conclusions of Law dated June 30, 1952, and its Order bearing that date, and award to the claimant a total disability rating, and pay him compensation under the Workmen's Compensation Act for a full period of 500 weeks from and after date of his injury on March 20, 1947.

"That the monthly payments to the claimant be converted to a lump sum payment, which said payments shall not exceed the estimated value of the present worth of the deferred payments capitalized at the rate of two per cent per annum."

The evidence introduced at the hearing before the industrial accident board, plus the additional evidence introduced without objection at the trial in the district court, as shown above, clearly sustains the findings of fact, conclusions of law and judgment of the district court rendered pursuant to the provisions of R. C. M. 1947, secs. 92-834 and 92-835.

In Tweedie v. Industrial Accident Board, 101 Mont. 256, 265, 53 Pac. (2d) 1145, 1149, the court said: "But one course was left to the claimant: Appeal to the district court and secure permission to show the real facts to the court. On such an appeal the district court is authorized by the act to modify or change the decision of the board 'as law and justice shall require,' and to 'make and enter any finding, conclusion, order or judgment that shall be required, or shall be legal and proper in the premises.' Section 2961, Rev. Codes, 1921 [R. C. M. 1947, sec. 92-835]; Willis v. Pilot Butte M. Co., 58 Mont. 26, 190 Pac. 124." The Tweedie case, supra, was followed in O'Neil v. Industrial Accident Board, 107 Mont. 176, 184, 81 Pac. (2d) 688. Compare: Meznarich v. Republic Coal Co., 101 Mont. 78, 93, 53 Pac. (2d) 82; Grief v. Industrial Accident Board, 108 Mont. 519, 526, 93 Pac. (2d) 961; McCoy v. Mike Horse Mining & Mill. Co., 126 Mont. 435; 252 Pac. (2d) 1036.

In the case now before this court there was no evidence either before the industrial accident board or before the district court to show that at any time after his injury the claimant has been able to work and earn wages while there is considerable substan-

tial evidence tending to show that claimant has been totally disabled and unable to earn wages since the date he met with the accident and suffered his injuries.

The comments of the court in Sullivan v. Anselmo Mining Corp., 82 Mont. 543, at page 556, 268 Pac. 495, on the sufficiency of the evidence applies equally here.

In Goodwin v. Elm Orlu Mining Co., 83 Mont. 152, 156, 269 Pac. 403, 406, the court said: "* * * although we give full credit and effect to the findings made by the board, we must still uphold the judgment of the district court, if the conclusions of law reached by the board are not correct."

Where as here the evidence before the district court was ample to sustain that court's judgment, such judgment will be affirmed. Partoll v. Anaconda Copper Min. Co., 122 Mont. 305, 311, 203 Pac. (2d) 974. See also Sykes v. Republic Coal Co., 94 Mont. 239, 22 Pac. (2d) 157.

Accordingly the judgment of the district court is affirmed and the industrial accident board is ordered to comply therewith.

ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN, ANGSTMAN and ANDERSON, concur.