PEITZ, RESPONDENT *v.* INDUSTRIAL ACCIDENT BOARD, APPELLANT.

No. 9304.
Submitted October 15, 1953. Decided December 8, 1953.
264 Pac. (2d) 709.

Arnold H. Olsen, Atty. Gen., John L. McKeon, Asst. Atty. Gen., Emmet T. Walsh, Asst. Atty. Gen., for appellant.

William T. Kelly, Billings, J. H. McAlear, Red Lodge, for respondent.

Mr. McKeon, Mr. Kelly and Mr. McAlear argued orally.

MR. JUSTICE BOTTOMLY:

On the 17th day of September 1951, Mike Peitz, while employed by the Elk River Concrete Products Company, and in the course of his employment, slipped and fell between two tiles while loading the tiles or pipes for his employer, and by reason of the fall, suffered injuries to his spine.

At the time of his injuries the employer and employee had elected to be bound, and were bound, under plan III of the Workmen's Compensation Act. It is conceded that the injuries sustained by the claimant arose out of and in the course of his employment and were and are compensable under the terms and provisions of the Act.

Mike Peitz, at the date of his injury, was 59 years of age and was earning approximately $250 per month at manual labor. He was married and was the father of one child under 18 years of age; his son and his wife were dependent on him for support. His education was very limited, and the only way he could earn a living was by manual labor.

Following a hearing the industrial accident board of the State of Montana made findings and conclusions, awarding Peitz 107 3/7 weeks at $24.50 per week and 118 4/7 weeks at $23.50 per week for a total maximum compensation of $5,418.44, upon which to and including June 1, 1952, the sum of $906.50 had been paid, leaving a balance owing as of June 1, 1952, of $4,511.94 to be paid; $2,000 in a lump sum and the balance of $2,511.94 to be paid in monthly instalments.

From this award of the board Peitz appealed to the district court of Yellowstone County, which court after a trial, entered a judgment in favor of Peitz, setting aside the board's findings, conclusions and award and adjudging that Peitz be awarded a total disability; that he be paid for a full period of 500 weeks from and after the date of his injury on September 17, 1951, and that a lump sum award and payment be made to him. This is an appeal by the industrial accident board from the judgment of the district court. No objection was made by or on behalf of the board to any of the evidence introduced by the claimant before the district court, and when the claimant had rested his

case counsel for the industrial accident board rested without introducing any evidence.

After reading the evidence produced before the board and at the trial before the district court, we find that the undisputed evidence so given is that Mike Peitz suffered total disability from the accidental injury of September 17, 1951, and still is in that condition and will continue to be permanently disabled for manual labor.

The purpose of the Workmen's Compensation Act is to determine the loss of ability and earning capacity after the accidental injury in relation to such capacity and ability as was had before the injury.

Dr. R. E. Brogan, a reputable physician who has had years of experience with such injuries from the coal mines in Roundup, Montana, testified at the trial before the district court, as he did before the board. He testified, inter alia, that he had examined Mike Peitz on December 19, 1951, and on November 5, 1952; that the condition of Mr. Peitz had deteriorated since his first examination; that he was suffering from a fracture in the spinal column, in common parlance a broken back. Dr. Brogan testified further:

"Q. From the injuries that you have seen and treated in Roundup, and from what you observed from your examination of Mr. Peitz, what do you have to say with regard to his ability to work at this time? A. I would say he is totally disabled for manual labor.

"Q. Based upon your examinaiton, is it your opinion that Mr. Peitz will never again be able to earn money by manual labor? A. * * * he will not be able to work.

"Q. Doctor, would you state, in your opinion, whether or not Mr. Peitz is totally and permanently disabled from the injuries that he has received? A. I would say 'yes.' I would say he is 100% disabled for labor."

The only testimony in the record that is different from the foregoing was given at the hearing before the board by Dr. Hagen, whom the board employed, with directions from the

board to determine the present condition and what, if any, permanent *partial disability* has resulted from Mr. Peitz' accidental injury. Dr. Hagen testified before the board that he had examined Mr. Peitz at the request of the board on January 24, 1952, and gave Mr. Peitz a 30 percent of total permanent disability by reason of his back condition. The doctor testified before the board:

"Q. Do you feel now that he is in condition to return to his former work? A. What was his former work?

"Q. He was working as a manual laborer for a concrete company here in Billings. A. No, I think we have previously discussed that fact and didn't feel that he was fitted for heavy or *manual labor* as you call it.

"Q. And that he never would be? A. He may well not be able to return to it. * * *

"Q. In making your rating, you didn't base it on his ability to work? A. Well, sir, this man, as I recall, *if I remember correctly,* stated that he was unable to work or do any work. That is not an infrequent observation on the part of an injured manual worker. If I were to use that as a basis then most all of the men of this type that I examine I would give 100% disability. Obviously, that's not in my judgment, *what I am asked to do,* and therefore, I cannot make it be a whole factor, although I do try to consider a *little bit* the individual's possibilities."

From a reading of Dr. Hagen's testimony before the board, and he did not testify at the trial before the district court, it is apparent that the doctor was not determining or rating Mr. Peitz on his present and future ability to perform manual work or to earn a living by his manual labor.

The findings and conclusions of the board were inconsistent ▆▆ with the undisputed evidence before it of Dr. Brogan that Mr. Peitz was suffering from the accidental injury of a broken back and that he was totally and permanently disabled for manual labor, together with the undisputed testimony of Peitz and others including the evidence given by the board's Dr. Hagen. Therefore the board's findings and conclusions were

not in accord with either the facts or the evidence produced and were contrary to law in that there was no competent and substantial evidence to support them and the district court was correct in so finding. The board may not, without cause or reason, disregard or refuse to give effect to uncontradicted evidence nor may it refuse to believe and to act upon credible evidence which is unquestioned and undisputed. Compare Sykes v. Republic Coal Co., 94 Mont. 239, 22 Pac. (2d) 157; Gagnon's Case, 144 Me. 131, 65 A. (2d) 6, 8.

The facts and circumstances in this case are almost identical with those in the recent case of Kustudia v. Industrial Accident Board, 127 Mont. 115, 258 Pac. (2d) 965, 970, wherein this court said: ''In the case now before this court there was no evidence either before the industrial accident board or before the district court to show that at any time after his injury the claimant has been able to work and earn wages while there is considerable substantial evidence tending to show that claimant has been totally disabled and unable to earn wages since the date he met with the accident and suffered his injuries.''

It is contended by the board that claimant, some three years or so before, had drawn compensation for a two and a half month period of time and that such compensation as was paid should be deducted from the present claim under the provisions of R. C. M. 1947, sec. 92-712. Mike Peitz testified that he had worked for the Elk River Concrete Products Company at Billings for some six years previous to September 17, 1951, the date of his present injury.

R. C. M. 1947, sec. 92-712, provides: ''Should a further accident occur to a workman who is already receiving compensation hereunder, or who has been previously the recipient of a payment or payments under this act, his further compensation shall be adjusted according *to the other provisions of this act,* and with regard to his past receipt of compensation.'' Emphasis supplied. R. C. M. 1947, sec. 92-418, defines injury: '' 'Injury' or 'injured' refers only to an injury resulting from some fortuitous event, as distinguished from the contraction of disease.''

R. C. M. 1947, sec. 92-838, provides: "Whenever this act or any part or section thereof is interpreted by a court, it shall be liberally construed by such court" in favor of the claimant or workman. Tweedie v. Industrial Accident Board, 101 Mont. 256, 263, 53 Pac. (2d) 1145; Grief v. Industrial Accident Board, 108 Mont. 519, 526, 93 Pac. (2d) 961; Wirta v. North Butte Mining Co., 64 Mont. 279, 291, 210 Pac. 332, 30 A. L. R. 964; 58 Am. Jur., Workmen's Compensation, sec. 27, pp. 595, 596.

It will be noted that each of the sections of the Act, providing for compensation for unscheduled injuries, provides in the first sentence as follows: Section 92-701: For an injury producing temporary total disability. Section 92-702: For an injury producing total disability, permanent in character.

In the instant case it appears that Peitz suffered a prior industrial accident several years before to a different segment of his body; that he drew compensation for approximately two or two and a half months; that at the time of his last injury he was not receiving compensation, nor were said prior payments commuted or paid in a lump sum. It is our opinion that reading all of the provisions of the Act and giving them the liberal interpretation which the legislature here has commanded requires the limitation affixed to unscheduled injuries to apply only to the particular injury which results from a particular accident. Any other interpretation would be discriminatory as between a person having a prior industrial accidental injury and another person who had the same kind of an injury outside of industry; when both thereafter had an unscheduled industrial accidental injury, the former would have his prior payments deducted while the latter would receive full payment. This situation could be multiplied in many different respects. We do not believe the legislature intended any such discrimination.

Another reason for this interpretation of this section is that under workmen's compensation laws it is a fundamental principal that the employer takes the employee subject to his physical condition at the time he enters employment. Compensation laws are not made solely for the protection of employees in

normal physical condition, but for those also who are not super physical specimens. See 1 Honnald's Workmen's Compensation, sec. 98, p. 302; Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 497, 40 Pac. (2d) 43; Green v. State Industrial Accident Commission, Or., 251 Pac. (2d) 437; Cain v. State Industrial Accident Commission, 149 Or. 29, 37 Pac. (2d) 353, 96 A. L. R. 1072, note, pp. 1080, 1081, 1082.

No standard of health or physical fitness for an employment is prescribed by our statutes to entitle an employee to compensation under the unscheduled injury part thereof, where the injury arises by accident out of and in the course of his employment. Where one enters an employment, the employer takes the employee as he is. Compare Spencer v. Industrial Commission, 87 Utah 336, 40 Pac. (2d) 188; Birdwell v. Three Forks Portland Cement Co., supra.

The capacities of a human being cannot be arbitrarily and finally decided and written off by percentages. The fact that a man has once received compensation, as for example, where he has previously received 250 weeks or half the statutory amount, does not mean that forever after he is in the eyes of the compensation law but half a man, so that he can never again receive a compensation award going beyond the other fifty percent of total. After having received his prior payments, he may, in future years, as in the present case, be physically able to and does resume full gainful employment for several years, and if he does, there is no reason or logic why a disability from an unscheduled industrial accidental injury, which would bring anyone else total permanent disability benefits, should yield him only half as much. We think the legislature had no such intention in drafting this Act. See 2 Larson's Workmen's Compensation Law, Successive Disabilities, sec. 59, pp. 54 to 67.

Where, as here, the undisputed evidence before the district court was sufficient to sustain that court's judgment, such judgment will be affirmed. Kustudia v. Industrial Accident Board, supra; Partoll v. Anaconda Copper Min. Co., 122 Mont.

324

305, 311, 203 Pac. (2d) 974; Sykes v. Republic Coal Co., 94 Mont. 239, 22 Pac. (2d) 157.

The judgment of the district court is affirmed and the industrial accident board is ordered to comply therewith.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES FREEBOURN, ANGSTMAN, and ANDERSON, concur.