## MARY E. THOMAS, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.*

Kansas City Court of Appeals. May 1, 1922.

1. **INSURANCE: Prohibited Occupation: Estoppel: Evidence: Offers of Proof Held Properly Excluded as Evidence of Estoppel to Deny Liability for Death While Engaged in Prohibited Occupation.** In an action upon a death benefit certificate issued by a fraternal society, offers to prove that a district deputy head consul of defendant, while explaining the by-laws and rules of the organization in an open meeting to the members thereof and insured, stated in answer to question of insured that if he continued as a member of the order and paid all dues and assessments levied and was not expelled after changing to a prohibited occupation, the insurance would be paid to his beneficiary if he were killed while engaged therein, and that he continued to pay all dues and assessments and at time of his death had paid the same in reliance upon such statement, *held* properly excluded as insufficient evidence of estoppel to deny liability because of insured's death directly traceable to his being engaged in such prohibited occupation, there being no forfeiture provided for in contract on account of insured's so engaging in such hazardous occupation, which thereby recognized

(10)

right of insured so to do, and if after he entered into the hazardous occupation he died from any other cause the policy was enforceable as though no such clause was contained in the contract.

2. **ESTOPPEL: Waiver: Waiver and Estoppel Defined.** A waiver arises by intentional relinquishment of a right or neglect to insist upon such right at the proper time, and does not imply conduct or dealing with another by which that other is induced to act or forbear to act, to his disadvantage, as an "estoppel" necessarily presupposes.

3. ————: **Party to Whom Misrepresentation or Concealment of a Material Fact is Made Must Have Been Ignorant of the Truth of the Matter.** One of the elements of estoppel is that the party to whom the misrepresentation or concealment of a material fact is made must have been ignorant of the truth of the matter.

4. ————: **Representations to Constitute an Equitable Estoppel Must be as to Matter of Existing Fact and Not a Mere Matter of Opinion.** A representation or defense, where one has been induced to act by reason thereof, should be of some fact then or previously existing, and not merely a promise as to future conduct or intentions, or an expression of opinion as to the law or legal effect of a contract, to constitute an estoppel.

5. **NEW TRIAL: Court by Assigning Reason for Sustaining Motion for New Trial Overrules Motion as to Assignments not Mentioned.** The court by assigning reason for sustaining motion for new trial, necessarily overruled the motion as to assignments not mentioned.

6. **EVIDENCE: Proofs of Death: Proofs of Death Conclusive as to Cause Mentioned Therein Unless Explained.** Proofs of death are conclusive upon plaintiff as to the cause of death mentioned therein, unless explained.

7. **INSURANCE: Proof of Death: Whether Explanation of Variance as to Cause of Death Between Proofs Thereof and Contention at Trial was Sufficient to Destroy Conclusiveness of Proofs, Held for Court Sitting as Jury.** Whether an explanation by plaintiff as to why proofs of death stated that an electric shock was the immediate cause of insured's death rather than phosgene gas poisoning as claimed by plaintiff, was sufficient to rob the proofs of their conclusive character, *held* for the court sitting as a jury.

8. **EVIDENCE: Experts: Court not Required to Believe Expert Testimony as to Cause of Insured's Death.** In a suit upon a death benefit certificate, the court was not required to believe expert testimony offered to show that insured came to his death by phosgene

gas poisoning, rather than by an electric shock received while engaged in a prohibited occupation, where such testimony covering the characteristics of phosgene gas and gas poisoning was based almost exclusively upon books and lectures rather than actual experience.

*Headnotes 1. Life Insurance, 37 C. J., Section 419; 2. Estoppel, 21 C. J., Section 118; 3. Estoppel, 21 C. J., Section 126; 4. Estoppel, 21 C. J., Sections 144, 151; 5. New Trial, 29 Cyc., p. 1028; 6. Evidence, 22 C. J., Section 502; 7. Life Insurance, 37 C. J., Section 450; 8. Evidence, 22 C. J., Section 823.

Appeal from the Circuit Court of Lafayette County.— *Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED *(with directions).*

Mandate of Supreme Court quashing writ of *certiorari,* April 4, 1924.

*Barbour & McDavid, H. F. Blackwell* and *Truman Plantz* for appellant.

*Lyons & Ristine* for respondent.

BLAND, J.—This is an action upon a death benefit certificate in the sum of $2000 issued by defendant, a fraternal benefit society, upon the life of Charles Homer Thomas in favor of his mother, the plaintiff herein, as beneficiary. The insured died on the 17th day of June, 1919, as the result of an electric shock and burn received while he was engaged in the occupation of an electric lineman and working for the Missouri Gas and Electric Service Company at Liberty, Missouri. Defendant refused to pay the amount of the policy and plaintiff brought this suit:—a jury was waived and the case was tried by the court, resulting in a judgment for the defendant. A motion for a new trial was filed by plaintiff and the court sustained the same, giving as his reason that

"The court erred in sustaining defendant's objection to plaintiff's offer to prove that defendant waived the insured's engaging in a hazardous occupation." Defendant has appealed.

The contract consisted of the application, defendant's by-laws, and the benefit certificate. In his application the deceased stated that he was employed as a laborer with the Lexington Water Company and that he was not employed directly or indirectly "in any of the occupations classed as hazardous or prohibited by the by-laws of this society;" that he agreed that he would not engage in any of such occupations except at the same time recognizing the full force and effect of defendant's by-laws limiting or extinguishing the society's liability upon the certificate of any member engaging in such occupation; that he agreed that if he failed to comply with any of such by-laws then in force or thereafter to be adopted, the benefit certificate would be void. The by-laws provided that any person who was engaged in the occupations named as hazardous in said by-laws should not become a beneficiary member of the society and if any applicant changed his occupation after making his application and prior to its adoption by engaging in such an occupation, he should not be eligible to join the society as a beneficiary member. The by-laws named as hazardous the following among other occupations: "II. Electric car, power, light or telephone lineman." The by-laws provided that engaging in or entering on or continuing in any of the hazardous occupations therein named "shall totally exempt said society from any and all liability to such member, his beneficiary or beneficiaries, on account of the death of such member directly traceable to employment in such hazardous or prohibited occupation."

The benefit certificate contains the following—

"If the said member at any time after the issuance of said Benefit certificate, shall enter upon any of the prohibited or hazardous occupations mentioned in the by-

laws of this Society, as the same now exist or hereafter may be modified, amended, added to or enacted, the entrance into said employment shall extinguish or limit the liability of this Society upon said certificate in accordance with the by-laws thereof in force at the time of his death.''

All of these provisions of the application, by-laws and benefit certificate were pleaded in the answer together with the fact that the insured came to his death while in the performance of his duties and while engaged in the occupation of an electric lineman and that his death resulted from an electric shock directly traceable to his said employment. The reply alleges that defendant and its officers had full knowledge of the fact that the insured had engaged in the occupation of an electric lineman and with such knowledge defendant's officer stated to him that it was ''all right'' for him to engage in such work and occupation and that if while so engaged he was killed the benefit certificate would be paid ''without question;'' that the insured relied upon such representations and continued to pay his dues and was in good standing at the time of his death; that by reason of such circumstances ''and the statements and waivers made'' by the defendant, plaintiff was entitled to the insurance provided for in the benefit certificate.

The offer of proof, containing matter which it is claimed shows waiver, which was excluded by the court and for which reason the court granted plaintiff a new trial, was to the effect that one Anthony Doble, a district deputy head Consul of the defendant while in Lexington, Missouri, the location of the camp of which the insured was a member, on financial business of the head camp, and while the local camp was in session, was asked by the insured ''at open lodge meeting'' at the time Doble was explaining to the members of the lodge the by-laws and rules of the organization, whether or not, now that he had changed his occupation and was engaged as an electric lineman, if he were killed while so en-

gaged, would his beneficiary receive her insurance, and that Doble replied—

"That such work was classed as a hazardous occupation under the by-laws of the Modern Woodmen of America, but that unless Charles Homer Thomas was expelled from the order on account of him so engaging, and that if he continued as a member of the order and paid all dues and assessments levied against him and was not expelled by the Modern Woodmen of America, and was killed while engaged as a lineman for the Electric Light Company, that his beneficiary, Mary E. Thomas, would receive her benefits and that the insurance would be paid by the lodge without question; that in reliance upon such statement made by Mr. Doble, for and on behalf of the head counsel and head camp of the Modern Woodmen of America, continued to pay all dues and assessments levied against him as such member, and that at the time of his death had paid all dues and assessments and complied with all the rules and regulations of the defendant."

Plaintiff also offered to prove that shortly before deceased talked to Doble he stated to persons other than the representatives of the defendant that if there was any question about his insurance in the defendant because he was engaged in one of the occupations classed as hazardous, he would drop this insurance and take other insurance; that he stated to his mother and other persons not representing the defendant that he relied upon the statements of Doble and continued to pay his dues and assessments on account of such assurance. The court likewise refused this offer of proof.

Plaintiff insists that the court erred in excluding these offers of proof for the reason that they tended to prove that the "defendant accepted dues and assessments with full knowledge on the part of the district· deputy head consul that the insured was engaged in a prohibited occupation and defendant is now estopped from denying liability on account of such prohibited occupation." We

think that the court properly excluded these offers of proof even assuming that Doble was such an officer of the defendant as would have authority to bind the defendant in the matters and things covered by the offer of proof, and there is a grave question as to whether he had such authority. We think that the evidence offered is insufficient to show either waiver or estoppel on the part of the defendant. The distinction between waiver and estoppel in insurance cases has not been fully recognized in the reported cases but the two have been well defined in the case of Metcalf v. Pheniz Ins. Co., 21 R. I. 307, 309, as follows—

"A waiver arises by the intentional relinquishment of a right by a person or party, or by his neglect to insist upon his right at the proper time, and does not imply any conduct or dealing with another by which that other is induced to act or forbear to act to his advantage; while an estoppel necessarily presupposes some such conduct or dealing with another."

It is apparent that there was no relinquishment of a known right or neglect to insist upon a right at the proper time by the defendant. There was no forfeiture provided for the insured engaging in a hazardous occupation anywhere in the contract had by the insured with defendant. Under its terms he had a perfect right to enter upon any of the occupations denominated as hazardous in the by-laws and by doing so the policy did not become void, but the agreement was that if he entered into such a prohibited or hazardous occupation and his death should be traceable to his employment in such, then the defendant should be exempt from liability under the policy. If after the insured entered into the hazardous occupation he died from any other cause, the policy was enforceable to the same extent as though no such clause against hazardous occupations was contained in the contract. At the time Doble received the information that the insured was engaged in an occupation denominated as hazardous or prohibited, defendant

could not have expelled insured from the society because he had done so for the reason that the contract recognized the right of the insured to engage in such an occupation. Defendant could not exact any higher rate of premium or assessment by reason of insured's entry into such an occupation. Under the provisions of the by-laws no person could obtain insurance who was engaged in any such occupation. Upon obtaining knowledge that insured had become an electric lineman, defendant had no right to refuse premiums thereafter offered by him upon the insurance. The benefit certificate was still in force and plaintiff had a perfect right to offer premiums due, and defendant to accept the same within any waiver upon defendant's part. This matter has been thoroughly settled by a number of decisions in other states. [Ridgeway v. Modern Woodmen of America, 157 Pac. 1191 (Kans.); Miller v. Illinois Banker's Life Ass'n., 212 S. W. 310 (Ark.); Abell v. Modern Woodmen of America, 105 N. W. 65 (Minn.); Modern Woodmen of America v. Talbot, 107 N. W. 790 (Nebr.); Crites v. Modern Woodmen of America, 117 N. W. 776 (Nebr.); Showalter v. Modern Woodmen of America, 120 N. W. 994 (Mich.); Frain v. Modern Woodmen of America, 155 Pac. 330 (Colo.); Modern Woodmen of America v. Weekley, 139 Pac. 1138 (Okla.).]

Plaintiff in her brief quotes extensively from defendant's by-laws concerning expulsion and disciplining of members who should violate the rules of the Society, but these have no bearing on the case. As before stated, insured, after obtaining the insurance, had a perfect right under the by-laws to enter into any of the occupations denominated "prohibited or hazardous." If Doble representing the defendant made statements to the insured set forth in the offer of proof, such statements were not sufficient upon which to base a plea of estoppel against the defendant. One of the elements of estoppel is that the party to whom the misrepresentation or concealment of a material fact is made, must have been

ignorant of the truth of the matter. [Action v. Dooley, 74 Mo. 63, 67.]

"The law is quite well settled that a representation, or defense, where one has been induced to act by reason thereof, should be of some fact then existing, or which had previously existed, and not merely a promise as to future conduct or intentions. Many of the authorities in support of this statement will be found cited in Bullock v. Wooldridge, 42 Mo. App. 356. In Herman on Estoppel, section 778, it is stated: If the representation relates to something to be afterward brought into existence it will amount only to a declaration of intention, or of opinion, liable to modification or abandonment upon a change of circumstance of which neither party can have any certain knowledge. The only case in which representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right and is made to influence others, and by which they have been induced to act. In Cooley on Torts, section 474, it is stated: Actual or positive fraud consists in deception practiced in order to induce another to part with property or surrender some legal right and which must relate to facts then existing or which had previously existed and which are material to the dealings between the parties on which the deception was employed." [Morris v. McMahan, 75 Mo. App. 494, 497.] The law as above stated is supported in the following authorities; Insurance Co. v. Mowry, 96 U. S. 544; 2 Herman on Estoppel, sec. 778, Bullock v. Wooldridge, 42 Mo. App. 356, 361, 362, 16 Cyc. 752.

It is apparent that the representations made by Doble were not of some existing fact but were merely a promise or an assumed future fact, for the offer to prove shows that the insurance was to be good only in case the defendant did not expel the insured, and the sense of the statement of Doble is that if the defendant desired at any time in the future to expel insured that it retain the right to do so. It was only in case that it did not expel him.

that his insurance would be good. Doble did not even promise the insured that defendant would not expel him.

In 16 Cyc. 756, 757, it is stated— "An admission, in order to constitute an estoppel, must relate to a matter of fact, and a person will not be estopped by an admission as to the law; and the same rule applies to admissions as to the legal effect of a contract.

And at page 750, 751—"A representation, to constitute an equitable estoppel, must ordinarily be as to a matter of fact and not a mere matter of opinion."

It is apparent that all that Doble was attempting to do was to give his opinion as to provisions of the contiact of insurance that defendant had with the insured. At the time insured asked the question Doble was engaged in explaining to the members of the lodge the by-laws and rules of the organization and Doble was merely putting his construction upon the contract. The terms of this contract were known to the insured at the time. At the time the insured had the conversation with Doble he knew that he had engaged in an occupation denominated by the society as hazardous or prohibited and he was fearful that by reason of this fact his insurance would not be good so he asked Doble concerning the matter. The certificate which he then had in his possession provided that if he engaged in any of these prohibited or hazardous occupations, "the entrance into said employment shall extinguish or limit the liability of this Society upon said certificate in accordance with the by-laws thereof in force at the time of his (insured's) death." Therefore the insured had knowledge of the provisions of the contract at the time he questioned Doble in reference to the same. The insured was not ignorant of the matter of which he was asking Doble. There is no claim that the statements or representations made by Doble were not made in good faith or that they were fraudulent, and under the circumstances it cannot be said that Doble was doing other than expressing his opinion as to the meaning or legal effect of the contract. [Miller v. Life Ass'n, supra.]

However, it is contended by plaintiff that the undisputed evidence shows that the insured came to his death as the direct result of phosgene gas poisoning that he received while a member of the American Army in France during the late war; that the burden of proof was upon the defendant to show that insured came to his death as the resuult of being engaged in a prohibited or hazardous occupation; that that burden has not been discharged and that this court should reverse and remand the causes with directions to the lower court to enter judgment in favor of plaintiff.

One of the assignments in the motion for a new trial was that the finding was against the weight of the evidence. The court having assigned his reason for sustaining the motion for a new trial, he necessarily overruled the motion as to the assignments not mentioned by him. [Buehler v. Paint Co., 231 S. W. 283, 287.] We therefore must hold that the trial court found that insured did not come to his death as the result of phosgene gas poisoning but as the result of receiving an electric shock and burn while engaged in his duties as a lineman. There was only one witness, named Asbury, to the death of the insured and he did not see the whole occurrence. This witness testified that he was working with insured and that he was about a half a block from the insured at the time of the latter's death; that he saw the insured go up the pole carrying the wire charged with a deadly current of electricity and that he next saw him strike the ground; that a tree obstructed the view of the witness; that insured was working on a ——— voltage wire. The witness went up the pole after insured fell and found a wire "to be tapped into the transformer." Insured was supposed to make "the primary tap on the transformer." When the witness reached the top of the pole he found that the work had been started by the insured. On direct examination the witness said that his attention was first attracted by a flash of electricity; that he heard his name called and that he judged

that it was called by the insured; that the tone of the voice "seemed like it was a cry of pain." The theory of plaintiff as to the immediate happening causing the insured's death is not plainly set forth in her brief but we assume that it is her theory that the insured died as the result of phosgene gas poisoning and that he then fell upon a live wire and that the flash of light occurred when he struck the wire and after his death. However, the testimony of Asbury upon direct examination would tend to show that insured was alive after he struck the wire and tended to show that the live wire was the cause of the death. However, later in his testimony, this witness testified that he would not be positive whether it was before or after he saw the flash that he heard his name called, or that he even heard his name or saw deceased fall. He testified that he examined the body after it fell and found a burn on insured's arm about the size of a quarter. This appeared to be an electrical burn; that the witness had experienced shocks a great many times in his work as a lineman and that the burns he received were always reddish white burns; that they never were dark brown or dark blue such as were the burns that appeared on deceased's body.

Plaintiff introduced expert testimony tending to show that burns upon a live man's body caused by electricity would be reddish white in color and that blue black burns indicated *post* death burns. Plaintiff also introduced testimony tending to show that the deceased had received a severe gassing from phosgene gas while in action in France and that a few days before his death he complained of a filling up sensation in his lungs; plaintiff introduced expert testimony tending to show that at any time from one to five years after a person has been subjected to gassing by phosgene gas the gas might attack the heart and cause instant death; that one of the symptoms of such gas in the system was the sensation known as "filling-up" of the lungs; that said gas was harmless or at least would not kill a person unless it

came in contact with the heart and that it usually caused more trouble after exercising than at any other time. These experts testified in answer to hypothetical questions propounded to them that deceased could or might have come to his death from the effects of phosgene gas.

Defendant introduced the death proofs furnished by plaintiff which stated that deceased came to his death at Liberty, Missouri, on June 17, 1919, as the result of an electric shock and the immediate cause of his death was an electric shock. We need not say whether the evidence of witness Asbury, in view of the great conflict therein, was sufficient from which the court could have found that deceased came to his death as the result of an electric shock rather than phosgene gas poisoning, for the reason that the proofs of death themselves were some evidence that the death was caused by an electric shock. The law is that such proofs are conclusive upon plaintiff as to the cause therein mentioned as the death of the insured unless explained. [Remfry v. Ins. Co., 196 S. W. 775, 778; West v. National Council Knights and Ladies of Security, 221. S. W. 391, 392; Castens v. Supreme Lodge Knights and Ladies of Honor, 190 Mo. App. 57; Stephens v. Met. Life. Ins. Co., 190 Mo. App. 673, 680.] An explanation was attempted to be made by plaintiff in this case as to why it was stated in the proofs that an electric shock was the immediate cause of insured's death. Whether that explanation was sufficient to rob the proofs of their conclusive character we need not say for the reason that even if such explanation was such that the jury, or the court sitting as a jury, could find it sufficient and true in fact, nevertheless, even after the explanation was made, the court sitting as a jury could still refuse to believe the explanation and base his conclusions on the fact that deceased came to his death from an electric shock upon the proofs of death alone. Neither was the court required to believe the expert testimony, especially in view of the fact that such testimony covering

Thomas v. Modern Woodmen of America.

the characteristics of phosgene gas and gas poisoning was based almost exclusively upon books and lectures rather than actual experience.

From what we have said the judgment should be reversed and the cause remanded with directions to reinstate the judgment in favor of the defendant, and it is so ordered. All concur.