## CHICAGO, R. I. & P. RY. CO. v. SAWYER.

### No. 26494. March 31, 1936.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, for plaintiff in error.

I. L. Harris and Fred Hoyt, for defendant in error.

BAYLESS, J. The plaintiff in error, the Chicago, Rock Island & Pacific Railway Company, was defendant below, having been sued by the plaintiff, Clarence D. Sawyer, the defendant in error, in the court of common pleas of Oklahoma county, Okla. The parties will be referred to as plaintiff and defendant.

The plaintiff brought the action to recover damages in the nature of wages lost by reason of the breach of a contract of employment and the relationships existing thereunder between him and the defendant. The plaintiff recovered judgment, and the defendant prosecutes this appeal.

The facts may be summarized thus. Plaintiff entered defendant's employment in a clerical capacity May 2, 1919. In 1922 the defendant entered into a contract with a railway brotherhood, called for the purpose of this record clerks' union, of which plaintiff was a member, governing employment wages, hours, seniority in service, etc. This contract was applied by the defendant to union and nonunion employees indiscriminately, and was known by, acquiesced in, and followed by the company and all of its employees, either union or nonunion. An employee's seniority or length of service with the defendant company generally determined the job or position which he could hold, under the operations of the contract, and seniority thereby became a valuable right and each employee zealously guarded his interests in this respect. The company bound itself to apply the rule of seniority and in good faith did so to the best of its ability. The clerks' union also intervened actively in behalf of any of its members. By the year 1925, plaintiff had been given a job as ticket seller in the defendant's depot office at Oklahoma City, in the I. T.—P. H. division, and was drawing $175 per month. He was under the superintendence of one Richards, defendant's depot ticket agent. Early in that year one Collins, defendant's division passenger agent and in another office and operating division of defendant company, desired the transfer of plaintiff to his office, and broached the subject to plaintiff and Richards. Plaintiff knew that if Collins' office was another division of defendant's operations, for the purpose of seniority of employees, he would lose his seniority in Richards' division if he was transferred. Therefore, before he accepted the offer of the other position, which in some respects was more desirable than the one he was holding under Richards, he consulted with them regarding the effect of the proposed transfer upon his seniority. After consultation with these agents of defendant, they advised him that they interpreted the contract to mean he would not be transferring from one division or seniority list to another division or seniority list, and that when the new work ceased plaintiff could return to his old job and would have his seniority unimpaired. Plaintiff made this transfer on March 12, 1925; remained at his new work until July, 1926, when he was returned to his old job. He continued there at his old job until September 5, 1931, when it was abolished. During this period, and about the year 1928, plaintiff severed his connections with the clerks' union. During the period from 1926 to 1931 the defendant posted periodically a list of its clerical employees in the I. T.—P. H. division and gave plaintiff's seniority as of May 2, 1919. In 1931, when his job was abolished, plaintiff, exercising his supposed seniority

rights, "bid in" a job held by an employee supposedly with less seniority. The defendant acquiesced therein and ordered the change. The other employee thereupon questioned plaintiff's seniority and contended plaintiff had only seniority from July, 1926, when he returned to the old job. The clerks' union thereupon intervened and contended likewise. Upon a consultation between the clerks' union and defendant it was agreed that plaintiff lost his 1919 seniority when he transferred in 1925, because he went into another operating division or seniority list, and that his present seniority dated from July, 1926, only. Defendant thereupon refrained from making the change. It considered plaintiff a competent employee, considered him to be yet on its list of employees, and was willing to assign him to any position his new seniority entitled him. Plaintiff protested this ruling, but, not finding any other job which he might hold under defendant, took other employment after a lapse of seven months. He sued for the seven months' salary.

We desire to discuss the controlling contentions made by the parties, but not necessarily in the order or arrangement of the briefs.

First. Concerning the nature and terms of plaintiff's entire employment. The plaintiff does not allege or prove what were the terms and conditions of his employment in 1919. The defendant had no contract with its employees collectively relating to seniority, etc., until 1922. Therefore, until the contract of 1922, we do not know what plaintiff's rights were.

Second. Did the contract of 1922 govern plaintiff and defendant? Yes, for the following reasons: Plaintiff was a member of the organization negotiating and entering into the contract. It is the only contract mentioned by the plaintiff as governing the relations, except the alleged oral contract in March, 1925. It is plaintiff's construction of the terms of this contract upon which he bases this action. At the time plaintiff was offered the transfer in 1925, he recognized its binding force upon him.

Third. Was the contract of 1922, relating to the loss of seniority upon transfer from one division or seniority list to another, correctly interpreted? Yes. The plaintiff himself had knowledge of this contract and its possible effect upon him. The evidence in the record is overwhelming that the contract had been so interpreted and applied by the defendant, the clerks' union, and all others. Its interpretation was established by custom. See McGregor v. L. & N. R. R. Co., 244 Ky. 696, 51 S. W. (2d) 953; and Aulich v. Craigmyle, 248 Ky. 676, 59 S. W. (2d) 560. Of course, it was the assurance of defendant's agents that plaintiff was an excepted employee and that such interpretation did not apply to him, that led him to transfer. That brings us to the vital question.

Fourth. Were the representations made by Richards and Collins of their interpretation of the contract, and their promises based thereon, binding upon defendant so as to give rise to a cause of action for a breach thereof?

They promised him two things: (1) That he should have his old job when he returned to Richards' office; and (2) his seniority should be unaffected. They performed the first, and no complaint is made on that point. The second they did not fulfill.

The failure of the defendant to make good the promise of its agents in the second particular did not give rise to a cause of action on the part of the plaintiff. It is true, as urged by plaintiff, that defendant, a corporation, can only act through its agents. American Soda Fountain Co. v. Stolzenbach, 75 N. J. L. 721, 68 Atl. 1078. But this rule exists only with concomitant rules, and one of these is that an agent ordinarily cannot act for or bind the corporation in matters not within the scope of the agent's authority. The alleged agreement of these agents of defendant to preserve the seniority of plaintiff was beyond the power of the corporation, and, under the overwhelming evidence of this record, the agreement touched upon a matter wholly without the scope of the authority, apparent or real, of these agents. The agreement which they were undertaking to make with plaintiff related to a matter not entrusted to them, it affected a general contract negotiated and entered into between defendant and its employees, union and nonunion, collectively, and neither plaintiff nor defendant could alter the terms thereof. Plaintiff knew this and made the change of jobs, not in reliance upon a new contract changing the contract of 1922, but in reliance upon a promise made based upon what later developed to be an incorrect interpretation of the contract. The defendant cannot be bound by this agreement nor suffer for its breach, unless estoppel enters in.

Plaintiff pleaded and attempted to establish by proof estoppel. He says in his brief

that estoppel arises upon these considerations:

"(1) The apparent authority of the agents to act.

"(2) The representations and agreements of the agents for defendant, with the plaintiff.

"(3) The representations and agreements held out to the plaintiff to induce him to change his position."

Plaintiff relies upon the following facts to bring about estoppel: (1) He was returned to his old job; (2) his seniority of 1919 was posted periodically thereafter; (3) all parties acquiesced therein and acted thereupon for several years thereafter.

This court has many times said that the following elements enter into estoppel: (1) A false representation or concealment of facts; (2) made or done with knowledge, actual or constructive, of the real facts; (3) the person to whom made or from whom concealed must have been without knowledge or means of knowledge of the real facts; (4) it must have been done with the intent that the other person act upon it; and (5) the other person must have relied upon it or acted upon it to his prejudice. Flesner v. Cooper, 62 Okla. 263, 162 P. 1112; Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329, and other cases.

Estoppel cannot exist in the absence of one or more of these elements. The co-existence of each and all of them is absolutely essential. Flesner v. Cooper and Gypsy Oil Co. v. Marsh, supra. This being so, the plaintiff's plea of estoppel must fail for the lack of two of these elements. It cannot be said that the representation was falsely made or that any known fact was concealed. It cannot be said that plaintiff was without knowledge or without means of knowledge.

All of this has been said regarding estoppel as though plaintiff's contention was that such estoppel related to a matter of fact. In our opinion this also cannot constitute estoppel because it was not a misstatement of fact, but was rather a misstatement of the effect of a contract—a statement of opinion based upon a misinterpretation of a contract.

The general rule may be stated as found in 21 C. J. 1147, section 151.

"While there is some authority to the contrary, it is very generally held that an admission, in order to constitute an estoppel, must relate to a matter of fact, and a person will not be estopped by an admission as to the law. A fortiori, the expression of opinion by one of the parties on a question of law where both parties have full knowledge of the facts, cannot create an estoppel."

We applied this rule in the case of Messick v. Johnson, 167 Okla. 463, 30 P. (2d) 176 (wherein a defendant was held not estopped to deny an admission of liability based upon his interpretation of a contract), and in the case of National Surety Company v. Craig, 94 Okla. 63, 220 P. 943 (where an appellant, acting under a void order of court releasing a first supersedeas bond, thereupon filed a second supersedeas bond, it was held that the sureties on the second bond were not estopped to deny liability when sued by the surety on the first bond who has later been required to pay, because no estoppel could arise upon a mistake of law). It has been applied by the courts of other states, one analogous case being that of Thomas v. M. W. of America, 218 Mo. App. 10, 260 S. W. 552, in which an authorized officer of fraternal insurance organization made statements concerning the legal effect of a certificate of insurance in the light of the insured's occupation, and after his death the organization took an opposite position, and it was held it was not estopped so to do by the previous stated interpretation of its contract. The Supreme Court of Louisiana in Straus v. City of New Orleans, 166 La. 1035, 118 So. 125, held a person who returned property for taxation as personal property, and thereafter acts consistently therewith, is not estopped thereafter to deny this position and may later take the position that such property was real property.

The judgment of the trial court is reversed, and the cause remanded.

McNEILL, C. J., and WELCH, CORN, and GIBSON, JJ., concur.