McCOY, APPELLANT, *v.* MIKE HORSE MINING & MILLING CO., RESPONDENT.

No. 9199.

Submitted November 13, 1952.   Decided January 9, 1953.
As Amended on Denial of Rehearing February 19, 1953.

252 Pac. (2d) 1036.

Mr. Myles J. Thomas, Helena, for appellant.

Messrs. Toomey & Hughes, Helena, for respondent.

Mr. Thomas and Mr. Michael J. Hughes argued orally.

MR. JUSTICE FREEBOURN:

Porter McCoy was accidentally injured on January 30, 1948, while in the course of his employment as a crusherman for the Mike Horse Mining and Milling Company, a corporation. The industrial accident board of the state of Montana awarded Mc-Coy compensation, which award, upon appeal by the Mike Horse Company to the district court of Lewis and Clark county, was by order of said district court set aside. From such district court order McCoy appeals.

On February 28, 1948, the Mike Horse Company filed with the industrial accident board a written notice designated "Em- ployer's First Report of Injury" and "signed this 26th day of Feb. 1948" by "A. E. Haesler, Official Title General Supt." In such report A. E. Haesler, general superintendent of the Mike Horse Company, states: "Porter McCoy * * * crusherman * * * was * * * on duty at time of accident" and when injured "was pulling a rock from the crusher and strained his side * * * muscle strain rt. side;" the accident occurring "Jan. 30, 1948."

McCoy filed a claim for compensation dated the "18 day of April, 1949," which was filed with the industrial accident board on April 22, 1949.

After hearing had, the industrial accident board, by order made January 4, 1950, denied and dismissed McCoy's claim because it "was not filed within the year period" and was "barred by the statute."

McCoy, on January 7, 1950, filed his petition for rehearing with the board. Both McCoy and the Mike Horse Company were

notified by the board on January 16, 1950, that such rehearing was granted. Although no rehearing was ever held, the board on May 1, 1950, rendered a "decision and order" abrogating and changing "its original order" and in such "decision and order" found that McCoy "was accidentally injured on January 30th, 1948, while in the employ of defendant company"; that the accident was "duly reported to the Board by the attending physician" and "by the employer"; that "the employer's report, dated February 26th, 1948, was received in the office of the Board on February 28th, 1948. The employer advised the Board, also on February 28th, 1948, that the claimant had returned to work for them." The board further found that McCoy had filed his claim for compensation on April 22, 1949, contending that he was disabled from January 30, 1948, to February 5, 1948, and from March 6, 1949, to the date of hearing, and that McCoy "suffered a hernia and other injuries to his abdomen on January 30th, 1948, while in the employ of the defendant company and that the hernia occurred on said date; that its appearance was accompanied by pain; that it was immediately preceded by some accidental strain suffered in the course of employment; and that it did not exist prior to the date of the alleged injury."

The decision of the board went on to state: "With reference to the claimant's failure to file a claim within the statutory period of one year, the Board finds that claimant was not properly advised of his physical condition; that he was not told that he had a hernia until more than a year from the date of his accidental injury had elapsed; that he was advised there was nothing wrong with him that occurred as a result of accident; and that his condition due to a hernia and other injuries was not brought to his attention properly. Claimant's right to compensation cannot be foreclosed under such circumstances. It is therefore ordered and adjudged that the defendant company pay the said Porter McCoy compensation at his legal rate of compensation for the period from January 30th, 1948, to

February 5th, 1948, and from March 6th, 1949 for a period of time to be fixed by the Industrial Accident Board."

The Mike Horse Company made application for rehearing on May 10, 1950, which was by the board on June 2, 1950, denied. From the board's order denying such rehearing the Mike Horse Company appealed to the district court of Lewis and Clark county, which appeal was heard on May 10, 1951. Upon hearing in the district court, the trial judge ordered the decision of the board awarding McCoy compensation vacated and set aside, and directed the claim of McCoy for compensation be denied and dismissed, with judgment in favor of the Mike Horse Company and against McCoy for costs.

From such order of the district court McCoy appeals.

The evidence is sufficient, if McCoy's claim is not barred by the statute, to sustain the decision of the board awarding him compensation. It definitely appears that the accident occurred and the injury was sustained on January 30, 1948, while McCoy's written claim for compensation was not filed with the board until April 1949.

The statute, R. C. M. 1947, sec. 92-601, provides: "In case of personal injury or death, all claims shall be forever barred unless presented in writing under oath to the employer, the insurer, or the board, as the case may be, within twelve months from the date of the happening of the accident, either by the claimant or some one legally authorized to act for him in his behalf."

The trial court had before it the following evidence: That the clinic doctors to whom McCoy was sent for treatment after the accident were paid "an allowance made by the company and the man contributed a part of that," McCoy contributing but $1 a month; that for over a period of a year, between January 30, 1948, and March 10, 1949, the clinic doctors made several cursory physical examinations of McCoy—the examining doctor testifying, "I never gave him what I consider a complete physical examination in reference to all his complaints,"—never informing McCoy what caused his pain, merely advising him to "take

a few days off and go back to work"; that they did nothing to ease his pain and refused to take X-ray pictures which he requested; that it was not until Dr. Gallivan, to whom McCoy went on March 10, 1949, "called the employers" and a clinic doctor, that X-ray pictures were taken and McCoy operated upon by the clinic doctors; that the testimony of the clinic doctors was antagonistic to and tended to defeat McCoy's claim for compensation, and was, at the same time, beneficial to the Mike Horse Company, the clinic doctors leaving the impression that McCoy's pain and physical difficulties were in no-wise the result of injury, but simply due to advancing age.

Although McCoy, using a wide leather belt fashioned by his own hands, and taking the clinic doctor's advice "to go back to work," had tried to work until the pain became too severe, and although he had readily submitted to an operation at their hands, one clinic doctor testified: "As long as you bring up the question, Judge, it has always been my opinion that the man has been a malingerer. The Court: You think he would even go so far as to submit himself to operation? A. I believe so in this case." This testimony was at variance with a previous written report made by the same doctor to the board concerning McCoy, under date of February 6, 1948, wherein he stated:

"Q. Was he disabled by this injury? A. Yes.

"Q. Is he able to attend to any part of his regular or any other occupation? A. No."

Although reference was made by some witnesses indicating that the clinic doctors were so-called contract doctors, no contract was introduced showing what, if any, contract existed between the Mike Horse Company and such doctors.

The statute, R. C. M. 1947, sec. 92-706, provides in part: "In addition to the compensation provided by this act and as an additional benefit separate and apart from compensation, the following shall be furnished:

"During the first nine (9) months after the happening of the injury, the employer or insurer or the board, as the case may be, shall furnish reasonable services by a physician or

surgeon, reasonable hospital services and medicines when needed, and such other treatment approved by the board, not exceeding in amount the sum of five hundred dollars ($500.00), unless the employee shall refuse to allow them to be furnished, and unless such employee is under hospital contract as provided in section 92-610. * * *''

There is no evidence showing McCoy waived any of the rights and benefits to which he was entitled under section 92-706 and as provided in section 92-610.

Under the statutes, then, and from the evidence of what occurred between the time McCoy was injured on January 30, 1948, and the time evidence was taken in the district court, one may reasonably conclude that the clinic doctors were provided by and under orders of the Mike Horse Company.

The evidence further indicates that McCoy, apparently an uneducated man, relied on one of the Mike Horse bosses to make the necessary claim for compensation. McCoy testified: ''Well my boss in the mill, my shift boss, said that I ought to go to the accident board and fill out papers, report it to the accident board. I told him he could tend to that. So he reported to the office; I guess he must have. I never did tell the mill boss about it; I just told my shift boss about getting hurt and he said he would report it.''

The fact that McCoy was sent to the clinic doctors and the general superintendent of the Mike Horse Company made the employer's report dated February 26, 1948, and filed with the board on February 28, 1948, shows that the mill boss did attend, at least in part, to taking the necessary steps to make McCoy eligible for compensation.

A liberal construction of the Compensation Act is commanded in order that the humane purposes of the legislation shall not be defeated by narrow and technical construction, and the intention of such requirement is for the benefit and protection of the injured workman and his beneficiaries. Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 Pac. (2d) 1145;

Edwards v. Butte & Superior Min. Co., 83 Mont. 122, 270 Pac. 634.

In the situation here presented the doctrine of equitable ■ estoppel should apply, and the fact that McCoy's written claim for compensation was not filed within twelve months from the date of the happening of the accident cannot defeat his right to compensation. Lindblom v. Employers' Liability Assurance Corp., 88 Mont. 488, 295 Pac. 1007. See also, Gugler v. Industrial Accident Board, 117 Mont. 38, 157 Pac. (2d) 89.

Nor can the fact that the board changed its first decision to ■ one in McCoy's favor, without having the granted rehearing, defeat McCoy's right to compensation.

As said by Chief Justice Callaway, in Radonich v. Anaconda Copper Min. Co., 91 Mont. 437, 8 Pac. (2d) 658, 661: "The intention of the Legislature was to get away so far as practicable from the technical practice and procedure which under our present system needs must govern the operation of a court. The Industrial Accident Board is a layman's court. It is in a measure a *rusticum forum*, as Chancellor Kent dubbed a board of arbitration. The intention of the act is to make practice and procedure before the board as simple as possible. The act calls for the speedy adjustment of industrial accident cases, regardless of technical forms and requirements; the board makes its own rules, provides its own forms."

The defendant company suffered no prejudice from the failure of the board to have the granted hearing. It was deprived, thereby, of no substantial right. Its right to petition for rehearing thereafter was exercised, and, upon denial thereof, it exercised its right of appeal to the district court, where a hearing was had and opportunity given for the introduction of further evidence.

The statement of the doctor, that in his opinion McCoy was ■■ a malingerer, was a naked conclusion and should have carried little weight with the trial court, in view of the written report made by the same doctor to the board on February 6, 1948. The evidence also showed that good and sufficient cause

existed which excused McCoy's failure to file his claim within one year of the happening of the accident.

The judgment and order of the trial court was not supported by the evidence.

For the reasons stated the order and judgment of the district court, setting aside the award to McCoy by the industrial accident board, is reversed and set aside, and the cause is remanded to such district court with directions to enter judgment affirming the findings and award of the industrial accident board.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and ANGSTMAN, concur.